THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN E. BLANKLEY, Defendant-Appellant.

Fifth District   No. 5—99—0837

Opinion filed March 12, 2001.—Rehearing denied April 18, 2001.

Daniel M. Kirwan and Lawrence J. O'Neill, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Knight, State's Attorney, of Greenville (Norbert J. Goetten, Stephen E. Norris, and T. David Purcell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOPKINS delivered the opinion of the court:

On June 8, 1998, John Blankley (defendant) pled guilty to one count of first-degree murder (720 ILCS 5/9—1(a)(3) (West 1998)) and one count of concealment of homicidal death (720 ILCS 5/9—3.1(a) (West 1998)). Prior to sentencing, defendant filed a *pro se* motion to withdraw his guilty plea. At the sentencing hearing on August 26, 1999, before his sentences were imposed, defendant asked the court to consider his motion to withdraw his guilty plea, but the court declined, as defendant had not yet been sentenced. The court sentenced defendant to 35 years' incarceration for the first-degree-murder conviction and five years' incarceration on the concealment-of-homicidal-death conviction, with both sentences to run concurrently; however, the court ordered the two sentences to run consecutively to a five-year prison sentence defendant received previously for a conviction in Ma-

coupin County. The court appointed defendant new counsel to represent him on his motion to withdraw his guilty plea. Defendant filed an amended motion to withdraw his guilty plea, which the court subsequently denied. Defendant appeals.

The issue presented for review is whether the court abused its discretion when it denied defendant's amended motion to withdraw his guilty plea. Defendant's argument is two-pronged: (1) that his guilty plea was not voluntarily or knowingly made but resulted from his counsel's ineffective assistance because counsel failed to subject the State's case to meaningful adversarial testing and (2) that his guilty plea was not knowingly and voluntarily entered because the court did not admonish him that his sentences could be imposed consecutively to a five-year prison sentence defendant was to serve for a conviction from another county. We affirm.

## FACTS

Defendant was arrested in Bond County on August 14, 1997. An information charging defendant with one count of first-degree murder and one count of concealment of homicidal death was filed on August 15, 1997. Defense counsel filed a motion for discovery on August 21, 1997, and the record reflects that the State timely complied with defendant's discovery request.

On September 4, 1997, defendant appeared for a preliminary hearing. Defendant indicated that he desired to waive his right to a preliminary hearing. The court fully admonished defendant as to the rights he would be relinquishing and also admonished defendant as to the possible penalties he could receive if convicted on both counts. The court asked defendant if he understood his rights and his possible penalties, and defendant acknowledged that he did. The court also asked defendant if he discussed with counsel his waiver of the preliminary hearing, and again defendant acknowledged that he had. After thorough questioning, the court allowed defendant to waive his right to a preliminary hearing.

Subsequent to the date of the preliminary hearing, defense counsel filed several motions: a motion for substitution of judge, a motion to set bail, and a motion to determine defendant's fitness to stand trial. Defendant's motion to determine fitness to stand trial stated that he was taking psychotropic medication. The court allowed defendant's motion for fitness to stand trial and appointed Dr. Taliana to conduct an examination of defendant. At a hearing held on April 30, 1998, Dr. Taliana's report was presented to the court, and based upon the report, the court found defendant fit to stand trial.

On June 8, 1998, defendant appeared before the court and stated

he wanted to plead guilty to one count of first-degree murder and one count of concealment of homicidal death. The State presented the plea negotiations: in exchange for defendant's plea of guilty to the two counts, the State would recommend a sentencing cap of 50 years' imprisonment on the first-degree-murder count. The prosecutor also stated that the sentence on count I would run concurrently to the sentence on count II.

The court advised defendant as to the rights he would relinquish if he pleaded guilty and asked defendant if he understood the rights he was giving up. Defendant stated that he understood. The court then admonished defendant as to the penalties he could receive if convicted. The court stated as follows:

> "Upon conviction for first[-]degree murder, you could be sentenced to prison for a fixed term, anywhere from twenty to sixty years.
>
> Under certain circumstances, you could get an extended sentence. That means you could be sentenced to prison for a fixed term, anywhere from sixty to one hundred years.
>
> Upon release, there is a three[-]year mandatory supervised release period.
>
> Under this type of charge, you are also eligible, under certain circumstances, for a natural life sentence, without parole. You would also be eligible, under certain circumstances, for the death penalty.
>
>            * * *
>
> The concealment of a homicidal death is a Class Three felony. Upon conviction, you could be sentenced to prison for a fixed term, anywhere from two to five years.
>
> If you have a prior Class Three or greater felony conviction within the last ten years, you could receive an extended sentence. This would be a sentence to prison, anywhere from five to ten years.
>
> Upon release, there is a one[-]year mandatory supervised release period.
>
>            * * *
>
> Since this is all one transaction, the sentence[s] *** will run concurrent [sic]."

During the admonishments, the court asked defendant on at least three occasions if he understood, and each time he was asked, defendant stated that he understood.

The State's factual basis for the plea was as follows. In July 1997, Deputy Tim Miller was dispatched to "Blue Hole, Shoal Creek," where Deputy Miller discovered a burned automobile. After checking the registration, Deputy Miller learned that the car belonged to Joann Wood, who had been reported missing since July 9, 1997. Deputy Miller

found human remains in the trunk of the car, and Dr. James Mc-Giveny, a forensic odontologist, subsequently identified them as the remains of Wood.

The State also asserted that it would produce several witnesses, including Sandy Farmer and Kelly Fuchs, who would identify Wood, defendant, and the codefendant, Susan Eaton. The State's witnesses would testify that they saw defendant at a bar in Troy, Illinois, during the late evening hours of July 9, 1997, and that they saw defendant, Eaton, and Wood leave the bar together.

Bobby Wayne Smith would testify that defendant and Eaton came to Smith's home in the early morning hours of July 10, 1997, in Wood's car. Smith saw a female, whom he did not know, in the trunk of the car. The woman appeared to be injured and, "at most, semi[ ]conscious." Smith saw either defendant or Eaton fire a shotgun into the trunk. Smith believed that they were shooting the woman.

Smith would also testify that the car was taken to Blue Hole. The woman was still in the trunk of the car, and tires were placed in the trunk. The car was set on fire and abandoned at Blue Hole.

According to the State, Smith would also testify that defendant told Smith that he and Eaton abducted the woman in the trunk from a bar in Troy, Illinois, the night before and that they robbed the woman of her jewelry and her credit cards. Defendant also told Smith that he beat the woman and that the woman was later shot and burned to make sure she was dead. The fire was also to cover up the murder.

Agent Mike Sheeley of the Illinois State Police would testify that he interviewed defendant on August 16, 1997, and that defendant made a statement. In defendant's statement, defendant admitted to being at the bar with Wood on July 9, 1997, and he also admitted that he was present when tires were placed in Wood's car and the car was set on fire.

The State also indicated that it had a statement from codefendant Eaton. In Eaton's statement, she admitted that she was present at the abduction and beating of Wood; however, Eaton identified defendant as Wood's attacker. Eaton admitted that she fired the shotgun into the trunk of the car. Eaton was also present when the car was set on fire. Eaton claimed that her involvement was coerced by defendant. Eaton's statement corroborated Smith's statement.

After receiving the factual basis for defendant's guilty plea, the court asked defendant if anyone promised him anything other than the negotiations stated on the record and if anyone forced or threatened him to plead guilty. Defendant responded in the negative. The court asked defendant if he was entering his plea freely and voluntarily and if defendant discussed his guilty plea with his counsel. Defendant responded in the affirmative.

The court told defendant that it would accept the terms of the plea agreement and advised defendant that, after a sentencing hearing, the court would impose a prison sentence in the range of 20 to 50 years as agreed. The court again asked defendant if he understood, and defendant stated he did. The court asked defendant if he still wished to plead guilty, and defendant said he did. The court accepted defendant's guilty plea, found defendant guilty, and entered judgment on the charges.

Defendant was sentenced on August 26, 1999. Before proceeding to sentencing, the court asked defendant if he wished to say anything, and defendant said no. The presentence investigation report, filed on August 6, 1998, also was presented. According to the report, defendant was charged with committing the offenses of unlawful delivery of cannabis with intent to deliver and unlawful production of cannabis sativa plant, and a warrant was issued for his arrest in Macoupin County on August 20, 1997. The presentence investigation report indicated that the Macoupin County case was scheduled for a hearing on August 19, 1998, prior to defendant's sentencing in the case *sub judice* but after defendant had entered his guilty plea.

The State recommended, in accord with the plea agreement, that defendant be given a 50-year prison sentence on the conviction for first-degree murder and a concurrent five-year prison sentence for his conviction for concealment of homicidal death, but the State asked that the two sentences run consecutively to the five-year prison sentence imposed in the Macoupin County case. The court imposed a 35-year prison sentence for the first-degree-murder conviction and a concurrent five-year prison sentence for the concealment-of-a-homicidal-death conviction and ordered the two sentences to run consecutively to the five-year prison sentence imposed in Macoupin County.

Defendant filed an amended motion to withdraw his guilty plea. The court heard the motion on December 21, 1999. As noted earlier, the court appointed different counsel to represent defendant on his motion to withdraw his guilty plea, since defendant's original motion asserted that his attorney provided ineffective assistance. At the hearing on defendant's motion, defendant was the sole witness to testify, and no other evidence was presented.

Defendant testified that he did not understand that he was relinquishing his rights because he was under the influence of psychotropic medication. Defendant stated that he had several problems with counsel. Defendant asserted that he never saw any discovery and that he received no copies of the documents from the State's Attorney; however, defendant stated that he saw his statement and a statement by "somebody at the bar."

Defendant testified that he wanted counsel to call certain witnesses to testify at the trial: "[f]amily members of people at the bar ***, stating what was supposed to have took place that night." Defendant described what these witnesses would have said: "Mrs. Woods came up, and there wasn't supposed to be no robbery. It was supposed to be a lesbian act, it was supposed to be a sexual act. That's all that was supposed to go[-]to be going on."

Defendant also wanted counsel to call to testify at the trial an individual with whom defendant played pool at the bar. Defendant did not know the individual's name, but he stated that defense counsel never tried to contact the individual.

Defendant testified he wanted defense counsel to call his family members to testify, at least at his sentencing hearing, but according to defendant, defense counsel "refused to put them on the stand." Defendant stated that defense counsel told him that his "sentence would run concurrent [*sic*], too." Defendant asked the trial court to set aside his guilty plea because his attorney did not investigate his case, because defendant was on psychotropic medication, and because he did not understand what was going on.

The trial court denied defendant's amended motion to withdraw his guilty plea. Defendant appeals.

## ANALYSIS

Defendant contends that the court abused its discretion in denying his amended motion to withdraw his guilty plea because defendant's plea was not voluntarily or knowingly entered. Instead, defendant claims that his plea resulted from his counsel's ineffective assistance. Specifically, defendant argues that counsel did not subject the State's case to meaningful adversarial testing as counsel (1) did not discuss discovery material or trial strategy with defendant, (2) did not challenge the voluntariness of defendant's confession, (3) did not interview witnesses that defendant told counsel could provide exculpatory testimony, and (4) did not investigate or develop a defense. Defendant relies on *People v. Halawa*, 291 Ill. App. 3d 373 (1997), to support his argument.

■ Generally, it is within the trial court's sound discretion whether to allow a guilty plea to be withdrawn, and absent an abuse of discretion, the trial court's decision will not be overturned on review. *People v. Davis*, 145 Ill. 2d 240 (1991). It is the defendant's burden to demonstrate that the withdrawal of his plea is necessary to correct a manifest injustice based upon the facts of the case. *People v. Kokoraleis*, 193 Ill. App. 3d 684 (1990). Subjective impressions, without substantial objective proof, are not sufficient grounds on which to vacate a guilty plea. *Davis*, 145 Ill. 2d at 244.

■ The same standard of review for ineffective assistance of counsel at the trial applies to a guilty plea. *People v. Correa*, 108 Ill. 2d 541 (1985). The claim of ineffective assistance of counsel is analyzed under the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and was adopted in Illinois in *People v. Albanese*, 104 Ill. 2d 504 (1984). *People v. Orange*, 168 Ill. 2d 138 (1995). Under the first prong of the *Strickland* test, a defendant must show that his counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. The second prong requires that a defendant show that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Further, if it is easier to dispose of a defendant's claim of ineffective assistance on the grounds of lack of prejudice, then a court need not examine whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

In *Halawa*, the defendant, who was 17 years of age, pleaded guilty to unlawful use of a weapon. The defendant's father contacted the police and told the police he had a gun to surrender. The same day the defendant and his father took the gun to the police station, the police telephoned the defendant's father and said that they needed more information but that no one would be charged with a crime. The following day, the police called and talked to the defendant, who agreed to come to the police station. The defendant's father was unable to go with the defendant. At the police station, the defendant admitted to possessing the shotgun, so the police charged the defendant with two offenses. The defendant's father hired his real estate attorney to represent the defendant. The defendant's attorney had the defendant plead guilty to one of the charges. As part of the plea agreement, the defendant waived his preliminary hearing. Defense counsel filed no motions and sought no discovery from the State. At the guilty plea hearing, the defendant's father advised the court that the police had taken the defendant's statement without counsel being present. The court accepted the defendant's guilty plea. On appeal, the defendant claimed that his counsel was ineffective because his guilty plea was neither voluntary nor consensual and that the ends of justice would have been better served by a trial. *Halawa*, 291 Ill. App. 3d at 374-75.

■ In *Halawa*, the appellate court applied the *Strickland* test and determined that when counsel entirely fails to subject the State's case to meaningful adversarial testing, a defendant has been denied his right to counsel under the sixth amendment and prejudice to the defendant is presumed. *Halawa*, 291 Ill. App. 3d at 377. The court in *Halawa* found that counsel's representation amounted to no represen-

tation at all because counsel filed no motion for discovery, filed no motion to quash arrest or suppress the defendant's statement, and waived the defendant's right to a probable cause determination. *Halawa*, 291 Ill. App. 3d at 377. The *Halawa* court determined that counsel's inaction did not subject the prosecution's case to meaningful adversarial testing and that the defendant was prejudiced by counsel's failure. *Halawa*, 291 Ill. App. 3d at 377.

■ The case *sub judice* is inapposite to *Halawa*. While it is true that defendant waived his right to a preliminary hearing, the record reflects that defendant was fully and thoroughly admonished about the rights he was relinquishing and the penalties he could receive if convicted. Defendant was not 17 years of age but was at least 33 years of age at the time of his waiver. Defendant appeared to recognize fully what he was doing in waiving his rights to a preliminary hearing.

Defense counsel also filed a motion for discovery, and the record reflects that the State responded to the motion in a timely fashion. Defendant stated at his hearing on his amended motion to withdraw his guilty plea that he saw his statement and a statement from a witness from the bar. The fact that defendant remembers those statements gives rise to the inference that he was provided with discovery and that his statements to the contrary were self-serving. Also, while defendant may have not "seen" all of the discovery, there is nothing in the record to reflect that his counsel did not advise defendant about the evidence the State had against him.

Defendant claims that his counsel did not file a motion to suppress his statement to the police. His statement, according to the factual basis for defendant's plea, was that he had contact with Wood at the bar and that he was present later when tires were placed into the trunk of a car and the car was burned. The statement does not incriminate defendant as the perpetrator of Wood's death but merely places him at the scene of the crime. The other evidence presented during the State's factual basis was overwhelming regarding defendant's guilt. There is no evidence that defendant suffered any prejudice by his counsel's failure to file a motion to suppress. Accordingly, we do not find that defense counsel's failure to file a motion to suppress defendant's statement was deficient representation, because defendant did not demonstrate that he suffered any prejudice and because there would have been no different outcome had counsel successfully challenged defendant's statement to the police. See *Orange*, 168 Ill. 2d at 153-54.

Similarly, defense counsel's representation is not deemed deficient because he failed to call unnamed and unknown witnesses on defendant's behalf. Even if counsel were to find these unnamed wit-

nesses, the witnesses, as defendant testified, would have merely negated the fact that a robbery was to take place, *i.e.*, that there was no robbery motive at the time of the crime. Further, defendant never explained how his family's testimony would have changed the outcome of the sentencing. The evidence was overwhelming that defendant and Eaton abducted Wood and that Wood died because she was beaten, shot, and burned by defendant and Eaton. This evidence was sufficient to convict defendant of first-degree murder. Counsel is not ineffective when he forgoes additional investigation if there appears to be a sound basis for his not doing so. *Orange*, 168 Ill. 2d at 150. It is a reasonable inference that defendant's counsel had no reason to investigate unnamed, unknown witnesses who might have testified to facts that would not exonerate defendant. "To prevail on a claim of ineffective assistance of counsel based on a failure to investigate, defendant must show that substantial prejudice resulted and that there is a reasonable probability that the final result would have been different had counsel properly investigated." *Orange*, 168 Ill. 2d at 151, citing *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068, and *People v. Kluppelberg*, 257 Ill. App. 3d 516, 527, 628 N.E.2d 908 (1993). Defense counsel's representation was not deficient for failing to call the witnesses defendant described at his hearing.

The evidence reveals that counsel's representation subjected the prosecution's case to meaningful adversarial testing so that there is no basis for presuming prejudice to defendant. Additionally, defendant's assertions are subjective impressions that are uncorroborated by substantial objective proof. Defendant's claim for ineffective assistance of counsel at his guilty plea hearing fails. See *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

■ Defendant's second contention is that his guilty plea was not voluntarily and intelligently made because the trial court failed to adequately admonish him as required under Supreme Court Rule 402(a)(2) (177 Ill. 2d R. 402(a)(2)). Supreme Court Rule 402(a)(2) requires that a court not accept a guilty plea until a defendant has been admonished as to the "minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or *consecutive sentences*." (Emphasis added.) 177 Ill. 2d R. 402(a)(2). Defendant specifically argues that he was not admonished that his concurrent sentences for his guilty pleas entered on the two counts could run consecutively to a five-year prison sentence he was to serve for his conviction in Macoupin County.

■ The State responds that since defendant failed to raise this is-

sue in his amended motion to withdraw his guilty plea, the issue is waived. Under Supreme Court Rule 604(d), any issue not raised in a motion to withdraw a guilty plea is waived. 145 Ill. 2d R. 604(d). However, a lower court's failure to give a defendant the admonishments required by Rule 402 has been held to be plain error, an exception to the waiver rule under Supreme Court Rule 615 (134 Ill. 2d R. 615). *Davis*, 145 Ill. 2d at 250. Because of the unique situation presented in this case and because of the substantial constitutional rights at stake, we determine that defendant has not waived this issue and apply the plain error doctrine.

■ The failure to properly admonish does not automatically require a reversal or a vacation of a guilty plea. *Davis*, 145 Ill. 2d at 250. "Whether reversal is required depends on whether real justice has been denied or whether defendant has been prejudiced by the inadequate admonishment." *Davis*, 145 Ill. 2d at 250.

■ For a guilty plea to be constitutionally valid, the record must reflect that a defendant's guilty plea was intelligently and voluntarily made. *People v. Johns*, 229 Ill. App. 3d 740 (1992). Substantial compliance with Rule 402 satisfies the constitutional requirement. *Johns*, 229 Ill. App. 3d at 742. Substantial compliance is not found from admonitions given at proceedings prior to the guilty plea proceedings. *Johns*, 229 Ill. App. 3d at 744. The crucial time for determining whether a plea was intelligently and voluntarily made within the mandates of Rule 402 is the time the plea is taken. *Johns*, 229 Ill. App. 3d at 744.

■ Our research has revealed no case similar to the case *sub judice*. Here, at the time of defendant's guilty plea, he had a case pending in Macoupin County that did not come up for a hearing until after defendant entered his guilty plea. This was reflected in defendant's presentence investigation report. Therefore, at the time defendant entered his guilty plea, there was no prior conviction or sentence imposed in the Macoupin County case. For some reason, not apparent of record, defendant did not have his sentencing hearing in this case until over a year after he entered his guilty plea. During that time, defendant was convicted and received a five-year prison sentence on his conviction in Macoupin County.

What defendant is essentially asking this court to decide is whether a trial court is under an obligation to admonish a defendant that he could receive a consecutive sentence when there is another county's case pending but there is no prior conviction or sentence at the time he enters his plea. This is not a case where there is a parole or probation violation, for in those cases, there has already been a conviction upon which the parole or probation rests. With a pending

case with no conviction or sentence, a trial court would not know whether a consecutive sentence was even possible, especially when the case is pending in another county. There was no basis for admonishing defendant as to the possibility of consecutive sentences at the time defendant entered his guilty plea. It is a reasonable inference that defendant did not rely on the trial court's failure to admonish him as to the possibility of a consecutive sentence when he entered his guilty plea.

At sentencing, the State recommended that defendant's Bond County convictions run consecutively to his Macoupin County conviction, and the court agreed. However, the court imposed concurrent sentences on the two Bond County charges. We do not find that under the facts of this case defendant suffered any prejudice by the court's failure to admonish him about hypothetical consecutive sentences. Further, it cannot be said that the court's failure to admonish defendant about consecutive sentences denied defendant real justice. Defendant received a sentence that, even if served consecutively to the Macoupin County charges, was within the cap agreed to by the State— not more than 50 years. The court substantially complied with the requirements of Rule 402. Defendant received the sentences he bargained for under his plea, so the court's denial of his amended motion to withdraw his guilty plea was not an abuse of discretion.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Bond County is affirmed.

Affirmed.

WELCH and GOLDENHERSH, JJ., concur.