NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 190277-U

NOS. 4-19-0277, 4-19-0278 cons.

IN THE APPELLATE COURT

FILED
April 29, 2021
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Coles County |
| BARRY WOLFE, | ) | Nos. 17CF420 |
| Defendant-Appellant. | ) | 17CF433 |
| | ) | |
| | ) | Honorable |
| | ) | Brien J. O'Brien, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Cavanagh and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding the trial court properly denied the defendant's motion to withdraw his guilty plea and his sentence was not excessive.

¶ 2    In June 2018, defendant, Barry Wolfe, entered an open plea of guilty to two counts of criminal sexual assault in Coles County case No. 17-CF-420 (see 720 ILCS 5/11-1.20(a)(4) (West 2016)), and two counts of criminal sexual assault in Coles County case No. 17-CF-433 (see *id.*). In August 2018, the circuit court sentenced defendant to 15 years in prison on each of the four counts, to be served consecutively. Following sentencing, defendant mailed a letter to the court alleging his plea counsel misrepresented the terms of his plea agreement and requesting to withdraw his guilty plea. The circuit court then allowed defendant's

plea counsel to withdraw and appointed new counsel for defendant, who filed motions to withdraw defendant's guilty plea or, in the alternative, reconsider his sentence. The circuit court denied the motions.

¶ 3        Defendant appealed, and this court allowed his motion to consolidate the two cases for review. Defendant argues this court should reverse the circuit court's denial of his motion to withdraw his guilty plea because the court failed to properly admonish him as required by Illinois Supreme Court Rule 402(a) (eff. July 1, 2012), and defendant had an objectively reasonable misapprehension of the law regarding the mandatory consecutive nature of the sentences he faced. Alternatively, defendant argues his sentence is excessive because the court considered improper aggravating factors, failed to consider relevant mitigating factors, and considered improper and irrelevant evidence at his sentencing hearing. Defendant further argues his attorneys were ineffective for failing to preserve certain issues for appeal. We affirm.

¶ 4                        I. BACKGROUND

¶ 5                    A. Charges and Guilty Plea

¶ 6        In October and November 2017, the State charged defendant by information with 38 counts of criminal sexual abuse and 17 counts of criminal sexual assault with two alleged victims: S.T. and M.S. 720 ILCS 5/11-1.20(a), 11-1.60(d), 11-1.60(f) (West 2016). Both alleged victims were members of various basketball teams coached by defendant. D.B., another young woman who had been coached by defendant, also alleged she was sexually abused by defendant and was interviewed by police at her college campus in November 2017. However, D.B. did not allege any conduct occurring in Coles County, and no charges were filed in connection with those allegations.

¶ 7          In June 2018, defendant entered into an open plea agreement with the State. In exchange for defendant's plea of guilty to four counts of criminal sexual assault (*id.* § 11-1.20(a)(4)), the State agreed to dismiss all of the remaining charges.

¶ 8          At the plea hearing, the State set forth the terms of the plea agreement and stated the following:

> "Your Honor, so that we are clear of the record, these counts *** by agreement would be consecutive to each other, and it would create a sentencing range of 16 years minimum, in the Illinois Department of Corrections and a 60-year maximum in the Illinois Department of Corrections; each of these Class 1 felonies containing a 4[-] to 15[-year] sentencing range."

The State noted that there was a "split in the districts" as to whether defendant's potential sentences would be required to be served consecutively, citing this court's decision in *People v. Glass*, 239 Ill. App. 3d 916, 606 N.E.2d 655 (1992) (holding the defendant's sentences for criminal sexual assault were required by statute to be served consecutively). The State concluded that "these [counts,] by agreement, by statute, by caselaw, and most importantly by agreement, each count would be mandatory consecutive to each other." After a brief off-the-record discussion about scheduling, the State once again summarized the agreement as follows: "[I] [b]elieve that would be the open agreement as to the counts that I have recited and the agreement that the same be consecutive within each cause and consecutive to each other in the other causes, in the combining causes." Defense counsel agreed, stating, "And I believe that is the agreement and the intent of the agreement." When asked by the court whether defense counsel agreed the counts were mandatorily consecutive to each other, he responded: "I believe that is correct, Your Honor. I think counsel and I are in agreement we think they are concurrent. However, because of

the split of the opinions, we figure it better be safe than sorry, and I do believe Justice Steigmann has said that he believes they are consecutive, and so we should err on the side of caution."

¶ 9    The trial court then began discussing the plea agreement with defendant and asked if he understood there was no agreement as to the sentence to be imposed. Defendant said he had a question, and after an off-the-record discussion, he responded "Yes, Sir. I understand and am in agreement." The court then reviewed the charges, admonishing defendant that the first charge was a Class 1 felony, and for that offense he could be sentenced to 4 to 15 years in prison. The court then stated the "same penalties appl[ied]" when it reviewed each of the other three charges. The following colloquy occurred between the court and defendant:

> "THE COURT: Do you understand that by agreement, the sentence on each count would be consecutive? In other words, the time would be added together? Do you understand that?
>
> THE DEFENDANT: Yes, sir. That's not what it was prior, but yes, sir, yes.
>
> THE COURT: Do you understand that is the disposition as suggested by the State today?
>
> THE DEFENDANT: I understand that, yes, it's from the State.
>
> THE COURT: And are you consenting to that, sir?
>
> THE DEFENDANT: Yes, sir."

¶ 10    The trial court once again repeated there was no agreement regarding the sentence and continued with its detailed Rule 402 admonishments, receiving defendant's repeated acknowledgement he understood the rights he was waiving, and ultimately agreeing his plea was

being entered free of any threats, force or promises, and that it was "voluntary and of [his] own free will."

¶ 11    The State's factual basis consisted of previously recorded statements from each of the two victims. These had already been reviewed by the trial court in preparation for a suppression hearing scheduled for the same day and the court confirmed with defendant's counsel the statements contained sufficient evidence, if believed by the jury, to substantiate the two counts to which defendant was pleading. The court then accepted defendant's plea as knowing and voluntary and set the matters for sentencing.

¶ 12                    B. Sentencing Hearing

¶ 13                    1. *Evidence*

¶ 14    Defendant's case proceeded to a sentencing hearing in August 2018. The State presented People's Exhibits 1, 1A, 2, and 3, which consisted of the recorded interviews with S.T., M.S., and D.B. The State also presented video recorded interviews of J.L. and P.S., who were also former participants in Wolfe's basketball program and alleged defendant had sexual contact with them, which were admitted as People's Exhibits 4 and 5.

¶ 15    The State then called D.B. to testify. The State introduced text messages purportedly sent to D.B. from defendant as People's Exhibit 7, which was admitted and published over defendant's objection. The State also introduced People's Exhibit 8, D.B.'s victim impact statement, which the court allowed D.B. to read into the record.

¶ 16    S.T. testified next. The State introduced People's Exhibit 9, a letter S.T. indicated had been sent to her by defendant and was admitted without objection. The State then introduced People's Exhibit 10, which contained text messages S.T. claimed defendant sent to her, which

was admitted over defendant's objection. Similarly, People's Exhibit 11, an email defendant allegedly sent to S.T., was admitted over objection.

¶ 17        The State's next witness was M.S. During her testimony, People's Exhibit 12, letters defendant allegedly mailed to M.S., were admitted and published over defendant's objection. The State additionally introduced People's Exhibit 13, containing text messages purportedly sent to M.S. from defendant, which were also admitted—and selected messages published—over defendant's objection. The State also introduced People's Exhibit 14, a picture of female genitalia with the following text she identified as defendant's handwriting: "coming to a campus near you," M.S.'s phone number, and the words "it's free." M.S. testified defendant sent her the picture. Lieutenant Jeremy Clark from the Mattoon Police Department (MPD) testified that he discovered an image consistent with this photograph on defendant's cell phone and could determine the website defendant had accessed to obtain it. The State then introduced People's Exhibit 6, containing a recording of defendant's interrogation with MPD, which was also admitted over defendant's objection.

¶ 18        The court reviewed victim impact statements from S.T.'s mother and from M.S.'s parents, and S.T. and M.S. were allowed to read their respective victim impact statements into the record.

¶ 19        The court allowed the admission of defendant's Exhibits A, B, and C, which were letters written by Sean McHenry, A.J. McNeil, and Brooke Ray, respectively. Finally, defendant made a statement in allocution.

¶ 20                            2. *Arguments*

¶ 21        The State argued defendant had a "sexual deviant side" and that he "abused his position of power for his own sexual gratification." It further argued that two aggravating

factors—that defendant held a position of trust or supervision over the victims and utilized his professional reputation in the community to commit the offense—applied. See 730 ILCS 5/5-5-3.2(a)(6), (14) (West 2016). The State argued for the maximum sentence of 15 years in prison for each count, for a total of 60 years.

¶ 22        Defendant's counsel argued for a sentence in the range of 20 to 25 years in prison, emphasizing defendant's lack of a criminal record was mitigating. However, defense counsel also acknowledged that "there is aggravation" because defendant "was in a position of trust and authority" and that the court "has to take that into consideration."

¶ 23        In rebuttal, the State clarified that defendant's use of his professional reputation or position in the community to commit the offenses, under section 5-5-3.2(a)(6) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-3.2(a)(6) (West 2016)), would be an appropriate aggravating factor to consider but that the court should not consider in aggravation whether defendant held a position of trust or supervision over the victims (*id.* § 5-5-3.2(a)(14)) because it was an element of the offenses to which defendant pleaded guilty. The court and defense counsel agreed.

¶ 24                        3. *Sentence and Postplea Motions*

¶ 25        In delivering its sentence, the court indicated that it had considered the evidence presented, the presentence investigation (PSI) report, the evidence in aggravation and mitigation, defendant's statement in allocution, the arguments of counsel, and defendant's history, character, age, and attitude.

¶ 26        The court found the only applicable factor in mitigation was defendant's lack of criminal history. In aggravation, the court found defendant's conduct caused or threatened serious psychological harm, citing the victims' testimony and impact statements. The court

further found defendant used his professional reputation or position in the community to commit the offenses, or to afford him an easier means to commit them. The court found one of the most significant factors was the seriousness of the crimes charged, and a lengthy sentence was necessary to deter others. The court stated, "[T]his offense is about as egregious as they come. And I believe that a loud and clear message needs to be sent with the hope that no other coach or person in a position of supervision will ever abuse that power to the extent you have, [defendant]." Noting a "minimal" sentence would deprecate the seriousness of the offense and be inconsistent with the ends of justice, the court sentenced defendant to 15 years in prison on each of the four counts, to be served consecutively, for a total of 60 years in prison.

¶ 27        On August 20, 2018, defendant mailed a letter to the court alleging his defense counsel, Ed Piraino, misrepresented the terms of his plea agreement. According to defendant, Piraino informed him that if he pleaded guilty, he would receive a sentence of 16 years in prison to be served at 85% and that if he did not sign the paperwork that day, the offer would be withdrawn. On these grounds, defendant requested to withdraw his guilty plea. Shortly after, the circuit court allowed Piraino to withdraw as counsel and appointed Anthony Ortega of the Coles County public defender's office to represent defendant.

¶ 28        Defendant's new counsel, Ortega, filed a motion to withdraw defendant's guilty plea, arguing the trial court failed to properly admonish him pursuant to Illinois Supreme Court Rule 402(a) (eff. July 1, 2012). Specifically, defendant alleged the court failed to inform him of the mandatory consecutive nature of the sentences he would receive in exchange for his guilty pleas and that the sentencing range was between 16 and 60 years in prison. It further alleged Piraino's lack of understanding of the mandatory consecutive nature of the sentences prevented him from properly advising defendant and negotiating a plea agreement on his behalf. Ortega

additionally filed a motion to reconsider defendant's sentence, arguing it was excessive in light of the State's evidence in aggravation and defendant's evidence in mitigation. Specifically, defendant argued the court failed to give adequate consideration to defendant's potential for rehabilitation and the sentence was not in keeping with his past criminal and mental history, medical condition, family situation, economic status, education, occupation, or personal habits. Following an April 2019 hearing, the court denied both of defendant's motions.

¶ 29          This appeal followed.

¶ 30                                    II. ANALYSIS

¶ 31          On appeal, defendant argues the trial court erroneously denied his motion to withdraw his guilty plea because the court failed to properly admonish him as required by Illinois Supreme Court Rule 402(a) (eff. July 1, 2012), and he had an objectively reasonable misapprehension of the law regarding the mandatory consecutive nature of the sentences he faced. Alternatively, defendant argues his sentence is excessive because the court considered improper aggravating factors, failed to consider relevant mitigating factors, and considered irrelevant and prejudicial evidence at his sentencing hearing. Finally, defendant argues Piraino and Ortega were ineffective for failing to preserve certain issues for appeal. We affirm.

¶ 32                                  A. Guilty Plea

¶ 33          Defendant first argues this court should reverse the trial court's denial of his motion to withdraw his guilty plea because the trial court failed to properly admonish him regarding the minimum and maximum potential sentences and that the law required the sentences imposed to run consecutively to each other, thus rendering his plea involuntary and resulting in a manifest injustice. Defendant further argues the error "was compounded when the parties incorrectly described the mandatory consecutive nature of the sentences at the plea

hearing" and that "[b]ased on [Piraino]'s clear misunderstanding of the law, it is unlikely that he accurately advised [defendant] before the plea." We disagree.

¶ 34                                    1. *Applicable Law*

¶ 35          "For a guilty plea to be constitutionally valid, the record must reflect that a defendant's guilty plea was intelligently and voluntarily made." *People v. Blankley*, 319 Ill. App. 3d 996, 1007, 747 N.E.2d 16, 25 (2001). To determine whether a plea has been voluntarily and intelligently entered, Illinois Supreme Court Rule 402(a) (eff. July 1, 2012) requires the trial court to admonish the defendant on the nature of the crime charged, the sentencing range, and the rights the defendant gives up by pleading guilty. We review whether the trial court properly complied with Rule 402 *de novo*. *People v. Hayes*, 336 Ill. App. 3d 145, 147, 782 N.E.2d 787, 789 (2002).

¶ 36          "A defendant has no absolute right to withdraw his guilty plea." *People v. Hughes*, 2012 IL 112817, ¶ 32, 983 N.E.2d 439. Instead, a "defendant must show a manifest injustice under the facts involved." *People v. Delvillar*, 235 Ill. 2d 507, 520, 922 N.E.2d 330, 338 (2009).

> " 'Where it appears that the plea of guilty was entered on a misapprehension of
> the facts or of the law, or in consequence of misrepresentations by counsel or the
> State's Attorney or someone else in authority, or the case is one where there is
> doubt of the guilt of the accused, or where the accused has a defense worthy of
> consideration by a jury, or where the ends of justice will be better served by
> submitting the case to a jury, the court should permit the withdrawal of
> the plea of guilty and allow the accused to plead not guilty.' " *People v. Davis*,

145 Ill. 2d 240, 244, 582 N.E.2d 714, 716 (1991) (quoting *People v. Morreale*, 412 Ill. 528, 531-32, 107 N.E.2d 721, 723 (1952)).

¶ 37        A trial court has discretion to permit a defendant to withdraw his guilty plea, and that decision will not be reversed on appeal absent an abuse of discretion. *People v. Manning*, 227 Ill. 2d 403, 411-12, 883 N.E.2d 492, 498 (2008). "An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." *Delvillar*, 235 Ill. 2d at 519.

¶ 38                                    2. *This Case*

¶ 39        Here, we agree with the State the trial court's admonishments complied with Rule 402, defendant's plea was knowing and voluntary, and therefore the court did not err when it denied defendant's motion to withdraw his guilty plea. First, the court specifically stated that each charge to which defendant intended to plead guilty was a Class 1 felony and carried a potential sentencing range of 4 to 15 years in prison. Additionally, the court asked defendant whether he "underst[oo]d that by agreement, the sentence on each count would be consecutive," meaning that "the time would be added together." Defendant responded, "Yes, sir. That's not what it was prior, but yes, sir, yes." A review of the record reveals however, defendant was aware as early as the November 2017 bond modification hearing that the State represented to the court defendant was subject to mandatory consecutive sentencing. At the plea hearing defendant acknowledged consecutive sentencing was part of "the disposition as suggested by the State today." The court then specifically asked if he was "consenting to that," and defendant stated, "Yes, sir." Defendant's testimony at the hearing on his motion to withdraw his guilty plea that Piraino promised he would be sentenced to a total of 16 years in prison is belied by his testimony at the plea hearing that he understood and accepted that the sentences on each of the four counts

would run consecutively to each other and that he could be sentenced to a maximum of 15 years on each count.

¶ 40        Moreover, the court was not required to admonish defendant that four 15-year sentences would result in a total of 60 years in prison. See *People v. Chavez*, 2013 IL App (4th) 120259, ¶ 21, 998 N.E.2d 143 (holding the trial court was not required to admonish the defendant regarding the maximum aggregate sentence where it adequately explained the minimum and maximum penalties and the concept of consecutive sentencing). We agree with the State that the discussion at the plea hearing between the assistant state's attorney and defense counsel regarding whether the law required the sentences to be consecutive had no bearing on whether defendant voluntarily pleaded guilty because they both agreed the sentences were to be served consecutively and the trial court explicitly stated that would be the case when discussing the terms of the plea with defendant. Defendant was repeatedly advised of the potential prison sentences he faced and the fact they would run consecutively. Any initial confusion or misapprehension of the facts or law defendant may have experienced was resolved by the court's repeated clarifications. We conclude the court complied with Rule 402 and did not abuse its discretion when it denied defendant's motion to withdraw his guilty plea.

¶ 41                              B. Excessive Sentence

¶ 42        Defendant alternatively argues his sentence was excessive because the court abused its discretion when it failed to consider applicable factors in mitigation, erroneously considered improper aggravating factors, and allowed the admission of irrelevant and prejudicial evidence. Defendant recognizes he has forfeited several of these arguments by failing to object at sentencing and raise them in his motion to reconsider his sentence. He requests we review these unpreserved issues for plain error.

¶ 43 Normally, in order for a defendant to preserve a sentencing error for review, both a contemporaneous objection and a written postsentencing motion raising the issue are required. *People v. Harvey*, 2018 IL 122325, ¶ 15, 115 N.E.3d 172; see also 730 ILCS 5/5-4.5-50(d) (West 2018) (stating a defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed within 30 days following the imposition of sentence). Here, defendant's postsentencing motion raised generic claims of excessive sentence but did not apprise the trial court of the specific claims of error he raises on appeal and did not provide the court an opportunity to address it. See *People v. Heider*, 231 Ill. 2d 1, 18, 896 N.E.2d 239, 249 (2008).

¶ 44 The plain-error rule found in Illinois Supreme Court Rule 615 (eff. Jan. 1, 1967) states, "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded" unless the appellant demonstrates plain error. " '[S]entencing errors raised for the first time on appeal are reviewable as plain error if (1) the evidence was closely balanced or (2) the error was sufficiently grave that it deprived the defendant of a fair sentencing hearing.' " *People v. Williams*, 2018 IL App (4th) 150759, ¶ 16, 99 N.E.3d 590 (quoting *People v. Ahlers*, 402 Ill. App. 3d 726, 734, 931 N.E.2d 1249, 1256 (2010)). However, the doctrine of plain error is not a general savings clause to be used to preserve all errors affecting substantial rights not previously brought to the trial court's attention; rather, it is a narrow and limited exception to the general forfeiture rule. *People v. Jackson*, 2020 IL 124112, ¶ 81, 162 N.E.3d 223; see also *People v. Herron*, 215 Ill. 2d 167, 177, 830 N.E.2d 467, 474 (2005).

¶ 45 In addressing a claim of plain error, it is appropriate to determine whether error occurred at all. See *People v. Hood*, 2016 IL 118581, ¶ 18, 67 N.E.3d 213. This is especially true where a defendant contends the trial court relied on improper factors in aggravation during

sentencing, since the trial court's consideration of an improper factor is not cause for remand if the record demonstrates the weight placed on that factor was so insignificant that it did not lead to a greater sentence. *Heider*, 231 Ill. 2d at 21. Accordingly, we address below whether any of the issues defendant raises constituted error.

¶ 46                                   1. *Aggravating and Mitigating Factors*

¶ 47          We first address defendant's argument regarding the court's consideration of the factors in aggravation and mitigation. Specifically, defendant argues the court (1) improperly considered in aggravation the psychological harm to S.T. and M.S. and defendant's status as their coach and (2) failed to consider in mitigation "either that [defendant]'s conduct did not cause or threaten serious physical harm, or that he did not contemplate that his conduct would cause or threaten serious harm." We disagree.

¶ 48                                   a. Applicable Law

¶ 49          The trial court has broad discretion in imposing a sentence. *People v. Patterson*, 217 Ill. 2d 407, 448, 841 N.E.2d 889, 912 (2005). Accordingly, we will not reverse a trial court's sentencing determination unless it represents an abuse of the judge's discretion. *People v. Brown*, 2019 IL App (5th) 160329, ¶ 18, 145 N.E.3d 486. " 'In determining an appropriate sentence, a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment, must be equally weighed.' " *People v. Hestand*, 362 Ill. App. 3d 272, 281, 838 N.E.2d 318, 326 (2005) (quoting *People v. Hernandez*, 319 Ill. App. 3d 520, 529, 745 N.E.2d 673, 681 (2001)).

¶ 50          Generally, a sentencing court cannot consider factors implicit in the offense to which a criminal defendant has been convicted as aggravating factors at sentencing. *Brown*, 2019 IL App (5th) 160329, ¶ 18. However, "a sentencing court need not unrealistically avoid any

- 14 -

mention of such inherent factors, treating them as if they did not exist. [Citations.] In addition, although a particular factor might be inherent in a particular crime, the degree to which it is present might differ from occurrence to occurrence." *People v. O'Toole*, 226 Ill. App. 3d 974, 992, 590 N.E.2d 950, 962 (1992). The mere mention or consideration of a factor inherent in the offense during sentencing is not necessarily reversible error. See *People v. McPherson*, 136 Ill. App. 3d 313, 317, 483 N.E.2d 592, 594 (1985).

¶ 51                                                    b. This Case

¶ 52            Here, we agree with the State that the court did not consider improper aggravating factors at sentencing or fail to consider applicable mitigating factors.

¶ 53                                            i. *Psychological Harm*

¶ 54            First, the trial court's consideration of the psychological harm to the victims—which defendant argues is inherent in all sexual crimes against children—was not improper.

¶ 55            The Unified Code provides that a sentencing court may consider certain factors as reasons to impose a more severe sentence, including whether "the defendant's conduct caused or threatened serious harm." 730 ILCS 5/5-5-3.2(a)(1) (West 2016). Defendant, relying on *People v. Calva*, 256 Ill. App. 3d 865, 875, 628 N.E.2d 856, 864 (1993), argues that a sentencing court's consideration of serious psychological harm to children due to sexual abuse is improper when no evidence of a greater degree of psychological harm than is inherent to sexual abuse cases was presented. The State argues this case is more akin to *People v. Bunning*, 2018 IL App (5th) 150114, ¶¶ 20-21, 103 N.E.3d 864, in which the Fifth District held that the trial court's consideration of psychological harm to a child victim of sexual abuse was appropriate where (1) the victim testified regarding the instances of abuse, (2) the trial court noted evidence the child sought psychological treatment, and (3) the mother of the victim submitted an impact

statement which "outlined the upheaval caused by defendant's abuse" and "referred to 'counseling appointments.' "

¶ 56　　　　While defendant correctly recites the holding in *Calva*, we find this case is distinguishable and more closely resembles *Bunning*. First, in *People v. Muraida*, 2021 IL App (4th) 180650-U, ¶ 59, this court stated:

> "*Calva* is an outlier, and of the 27 times it has been cited by Illinois courts as of this writing, none have been in actual support of defendant's proposition [that psychological harm caused by a sex crime on a child is not a proper factor to be considered in aggravation of sentence for that crime]." See also Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021) (stating a nonprecedential order entered under Rule 23(b) after January 1, 2021, may be cited for persuasive purposes).

Additionally, here, as in *Bunning*, both victims testified at sentencing regarding the immense psychological harm they experienced as a result of defendant's abuse: M.S.'s statement noted she had developed anxiety and explained the toll the abuse took on her relationships with her parents and boyfriend; S.T.'s statement mentioned loss of sleep, depression, and suicidal ideation. In announcing defendant's sentence, the court specifically stated that "[d]efendant's conduct clearly caused or threatened serious harm, as psychological harm is certainly a proper consideration in aggravation, and is clearly present in this case as demonstrated by the various victim impact statements." Finally, S.T.'s mother and M.S.'s parents both submitted statements referencing the psychological impact on the victims. Accordingly, as in *Bunning*, we conclude the record supports a finding of psychological harm to the victims and the court did not err in considering this factor in aggravation at sentencing.

¶ 57        Having said that, we do not believe the admissibility of psychological harm necessarily requires the three-element analysis found in *Bunning*. Psychological trauma to a victim can be considered as an aggravating factor even without direct evidence of trauma. See *People v. Reber*, 2019 IL App (5th) 150439, ¶ 94, 125 N.E.3d 551 (favorably citing this court's decision in *People v. Burton*, 102 Ill. App. 3d 148, 154, 429 N.E.2d 543, 547-48 (1981)). Harm is not an element or inherent in the offense (see *People v. Kerwin*, 241 Ill. App. 3d 632, 636, 610 N.E.2d 181, 185 (1993)), and the supreme court has made it clear the *degree* of harm may well be an appropriate subject for consideration. *People v. Saldivar*, 113 Ill. 2d 256, 269, 497 N.E.2d 1138, 1143 (1986). Most cases addressing this issue have found the psychological harm suffered by child victims of sexual assault proper for consideration at sentencing. See, *e.g.*, *People v. Nevitt*, 228 Ill. App. 3d 888, 892, 593 N.E.2d 797, 799 (1992); *People v. Ulmer*, 158 Ill. App. 3d 148, 151, 510 N.E.2d 1296, 1298 (1987); and *Burton*, 102 Ill. App. 3d at 153-54. As the First District noted in *People v. Sherman*, 2020 IL App (1st) 172162, ¶ 52, public policy requires that a sentence be varied according to the circumstances of the offense. As a result, courts should not rigidly apply the rule that a factor inherent in the offense cannot be considered at sentencing. For example, they noted, the degree of harm inflicted on the victim can be considered as an aggravating factor at sentencing, even when serious bodily harm is an element inherent in the offense. *Id.* (citing *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 17, 50 N.E.3d 723); see also *Saldivar*, 113 Ill. 2d at 269. We find there is more than enough support in the cases cited above, and others, to permit testimony of psychological harm to young victims of sexual assault without necessarily meeting the three criteria outlined in *Bunning* and, although we do not consider them necessary, we note their presence in this case.

¶ 58                                ii. *Defendant's Status as Coach*

- 17 -

¶ 59          We turn next to defendant's argument the trial court improperly considered

defendant's position as a coach as an aggravating factor, because "holding a position of trust,

authority, or supervision" in relation to the victims was an element of the crimes charged in this

case. See 720 ILCS 5/11-1.20(a)(4) (West 2016) ("A person commits criminal sexual assault if

that person commits an act of sexual penetration and *** holds a position of trust, authority, or

supervision in relation to the victim."). We disagree.

¶ 60          Section 5-5-3.2(a)(14) of the Unified Code (730 ILCS 5/5-5-3.2(a)(14) (West

2016)) states that a trial court may consider as a factor in aggravation that "the defendant held a

position of trust or supervision *** in relation to a victim under 18 years of age." Similarly, the

Unified Code also allows the court to consider whether "the defendant utilized his professional

reputation or position in the community to commit the offense, or to afford him an easier means

of committing it." *Id.* § 5-5-3.2(a)(6).

¶ 61          Here, the court's consideration of defendant's position as a coach was not

improper. We agree that it would be improper for the court to consider, as a factor in

aggravation, the fact defendant held a position of trust and authority over the victims because it

was an element of the crimes to which defendant pleaded guilty (see 730 ILCS 5/11-1.20(a)(4)

(West 2016))—a fact which the trial court specifically acknowledged at the sentencing hearing.

We further note that in delivering its sentence, the trial court stated that "[t]his is a case about the

person who held a position of trust or supervision, a person who was entrusted to teach and

watch over young children, young athletes, young women, and about a gross abuse of that

power, and a gross abuse of that trust." However, when read in context, the court made this

comment *prior* to its discussion of the statutory factors in aggravation and mitigation. The

court's brief discussion of defendant's position of trust as the victims' basketball coach was

relevant to defendant's character, and the court was permitted to consider the degree to which this factor was present in evaluating the seriousness of the offense. See *O'Toole*, 226 Ill. App. 3d at 992. Perhaps the First District in *Sauseda*, 2016 IL App (1st) 140134, ¶ 15, explained it most clearly:

> "A trial court is not required to refrain from any mention of sentencing factors that constitute elements of the offense. [Citation.] Sentencing hearings do not occur in a vacuum, and the duty to impose a fair sentence entails an explanation of the court's reasoning in the context of the offenses of which a defendant has been convicted. A fair sentence is not just the product of mechanically tallying factors in aggravation and mitigation and calculating the result. Indeed, a sentencing hearing is likely the only opportunity a court has to communicate its views regarding the defendant's conduct, and thus we do not agree that a trial judge's commentary on the nature and circumstances of a defendant's crimes necessarily results in improperly using elements of the offense as factors in aggravation."

¶ 62 Moreover, when discussing the statutory aggravating factors, the court did not mention the factor regarding holding a position of trust or authority at all; rather, the court referred only to the factors of psychological harm, that defendant used his professional reputation to commit the offenses, the seriousness of the offense, and deterrence. We decline to adopt defendant's position that defendant's use of his professional reputation as a basketball coach (730 ILCS 5/5-5-3.2(a)(6) (West 2016)) was inherent in the offense in addition to the element of holding a position of trust or authority over the victims (*id.* § 5-5-3.2(a)(14)) because the presence of one of these factors does not necessitate the presence of the other. It is not

inconceivable that an individual who commits sexual assault can hold a position of trust or authority over a victim without having used their professional reputation to commit the offense, and vice versa. Accordingly, we conclude the court's consideration of defendant's position in the community as a coach was not improper.

¶ 63                                   iii. *Threat of Serious Harm*

¶ 64          Defendant next argues the court erred by failing to consider as factors in mitigation that defendant's conduct neither caused nor threatened serious physical harm to another and defendant did not contemplate his conduct would cause or threaten serious physical harm. See *id.* § 5-5-3.1(a)(1), (2). We disagree.

¶ 65          Section 5-5-3.1(a) of the Unified Code states the trial court shall accord weight to several factors in favor of withholding or minimizing a sentence of imprisonment, including whether "[t]he defendant's criminal conduct neither caused nor threatened serious physical harm to another" and "[t]he defendant did not contemplate that his criminal conduct would cause or threaten serious physical harm to another." *Id.*

¶ 66          Here, we find the court did not abuse its discretion when it found the aforementioned mitigating factors were not present in this case. As stated above, the victims in this case were both allowed to read their impact statements into the record, which included details regarding the harm defendant's sexual abuse caused them. M.S. specifically stated defendant "entered [her] house more than once without [her] knowing while [she] was home alone," and S.T. stated she had to be talked down from attempting to commit suicide by driving off a road due to the extreme psychological trauma she experienced as a result of the abuse. The record additionally showed defendant engaged in a pattern of threats, manipulation, and stalking-type behavior towards both victims. We agree with the State that one could reasonably

- 20 -

conceive this pattern of behavior—coupled with the sexual abuse—constituted a threat of physical harm, whether "self-inflicted or otherwise." Accordingly, the court's determination that these mitigating factors were not present in this case was not arbitrary or unreasonable and did not constitute an abuse of discretion.

¶ 67       In sum, we conclude the court considered appropriate mitigating and aggravating factors in this case and did not abuse its discretion in assigning weight to those factors when determining defendant's sentence.

¶ 68                    2. *Evidence at Sentencing*

¶ 69       Defendant next argues the court abused its discretion when it allowed the admission of irrelevant and prejudicial evidence during the sentencing hearing. Specifically, defendant argues the admission of the following evidence was improper: recorded interviews with J.L. and P.S., former members of defendant's basketball program; D.B.'s victim impact statement; text messages defendant sent to D.B.; a letter defendant sent to S.T.; text messages defendant sent S.T.; an email defendant sent to S.T.; letters defendant sent to M.S.; and text messages defendant sent to M.S. Defendant additionally argues the PSI was not prepared by a neutral party. Defendant argues the independent and cumulative effect of these errors requires this court to remand for a new sentencing hearing.

¶ 70                    a. General Principles

*¶ 71*       At a sentencing hearing, "a sentencing judge is given broad discretionary power to consider various sources and types of information" and the rules of evidence are relaxed. *People v. Williams*, 149 Ill. 2d 467, 490, 599 N.E.2d 913, 924 (1992). Evidence is admissible so long as it is reliable and relevant as determined by the trial court within its discretion. *People v. Hall*, 194 Ill. 2d 305, 352, 743 N.E.2d 521, 548 (2000). A sentencing court may consider

evidence of other alleged criminal conduct, even absent a conviction, so long as it meets the requirements of relevance and reliability. *People v. Spears*, 221 Ill. App. 3d 430, 436, 582 N.E.2d 227, 230 (1991).

¶ 72    "It is well settled that hearsay testimony is not *per se* inadmissible at a sentencing hearing as unreliable or as denying a defendant's right to confront accusers. The objection goes to the weight of the evidence and not its admissibility." *People v. Williams*, 181 Ill. 2d 297, 331, 692 N.E.2d 1109, 1127 (1998). However, this court has held that "such [hearsay] evidence should be presented in the form of live testimony, rather than hearsay allegations contained in an attachment to a presentence report." *People v. Raney*, 2014 IL App (4th) 130551, ¶ 44, 8 N.E.3d 633 (holding that admission of an impact statement from a victim of crimes not charged was improper, but reversal was not required due to lack of prejudice). In the latter situation, a reviewing court will only reverse the sentence if the defendant was prejudiced—*i.e.*, but for the admission of the improper evidence, he would have received a lesser sentence—by the procedure used or the material considered by the trial court. *Id.*

¶ 73                              b. This Case

¶ 74                              i. *Exhibits*

¶ 75    We first address defendant's arguments regarding the admission of certain exhibits at defendant's sentencing hearing.

¶ 76    Defendant argues the video recorded interviews with J.L. and P.S., who also alleged they were sexually abused by defendant, constituted improper hearsay evidence because defendant did not have the opportunity to cross-examine J.L. or P.S. regarding their statements. Although it is arguable the statements of the uncharged victims might have been better presented live (see *People v. Jackson*, 149 Ill. 2d 540, 548, 599 N.E.2d 926, 930 (1992)), this is not a

situation where such evidence was admitted by way of hearsay allegations in a presentence report (as in *Jackson*) or an unrelated victim impact statement attached to a presentence report (as in *Raney*). Instead, these were video recorded interviews by the police, with two similarly situated victims for which defendant had not been charged. We conclude defendant did not suffer prejudice due to their admission. First, the statements from J.L. and P.S. were both relevant and reliable. Both J.L. and P.S. were former participants in defendant's basketball program, and both alleged defendant had similar inappropriate sexual contact with them as the victims in this case. The evidence of these uncharged crimes was relevant to defendant's history and character. They also showed a pervasive pattern of behavior around young girls with whom defendant was given the responsibility of mentor and coach. They were corroborative of the statements of the victims in the cases for which defendant had admitted wrongdoing and pleaded guilty. Additionally, the officer who recorded the statements, Deputy Chief Sam Gaines of MPD, testified at the sentencing hearing and provided the foundation. Deputy Chief Gaines testified the recording equipment was working properly that day and represented an accurate depiction of the interviews. Defendant had the opportunity to cross-examine Deputy Gaines about any aspect of the taking of the statements, as well as the attitude, behavior, and manner of the victims as they related their experiences. Moreover, because the interviews were video recorded, the trial court had ample opportunity to perceive the demeanor of the witnesses and evaluate the credibility and weight to be assigned to their statements. Finally, the record does not show the court placed significant weight on these recordings—it did not reference them at all in delivering the sentence. Accordingly, we conclude defendant suffered no prejudice from their admission.

¶ 77        Defendant also argues the admission of D.B.'s victim impact statement was improper because she was not an alleged victim of any of the crimes charged in this case and

therefore her testimony was irrelevant. We disagree. Here, unlike in *Raney*, D.B. testified at defendant's sentencing hearing and was available for cross-examination. Although she was not a victim of the crimes charged in this case, we find that her testimony of defendant's other crimes was relevant to defendant's history and character. We agree with the State that *Raney* supports the principle the admission of a victim impact statement of a defendant's other relevant crimes does not constitute reversible error if that victim is available for cross-examination. See *Raney*, 2014 IL App (4th) 130551, ¶ 45 ("[The victim] could have been called as a witness to testify about defendant's misconduct (as opposed to submitting a written statement about the impact defendant's prior misconduct had on him), as such behavior reflected on defendant's character."). The admission of D.B.'s victim impact statement was not reversible error.

¶ 78        We next address defendant's argument regarding the admission of various text messages, letters, and emails defendant sent to D.B., M.S., and S.T. (People's Exhibits 7, 9, 10, 11, 12, and 13). Defendant argues the State failed to lay an adequate foundation with respect to each of the exhibits. We disagree. D.B., M.S., and S.T. all testified that each of the exhibits admitted during their respective testimony were true and accurate copies of the same. S.T. specifically stated, regarding a letter defendant had written to her (People's Exhibit 10), that she recognized his handwriting, and regarding an email she received (People's Exhibit 11), that she recognized defendant's email address. M.S. also testified she recognized defendant's handwriting in the letter admitted as People's Exhibit 12, and the text messages admitted as People's Exhibit 13 were from defendant's phone number. All of the aforementioned exhibits contained evidence of defendant's manipulative behavior and persistent communications—often without response—with his alleged victims, which were again relevant to defendant's history

and character. We conclude D.B., S.T., and M.S. provided a sufficient foundation for the admission of Exhibits 7, 9, 10, 11, 12, and 13.

¶ 79                                              ii. *PSI*

¶ 80          We next turn to defendant's argument he is entitled to a new sentencing hearing because the PSI was not prepared by a neutral party. Specifically, defendant argues the probation officer who prepared the PSI was biased because he stated in the conclusion section that defendant "had a sexually deviant side" and incorrectly stated defendant "forced his fingers into the vagina of two (2) minor females" and "forced these same females to place their mouths on his penis." We disagree.

¶ 81          "[T]he purpose of the requirement of a presentence investigation report is to insure that the trial judge will have all necessary information concerning the defendant before sentence is imposed, including the defendant's criminal history." *People v. Youngbey*, 82 Ill.2d 556, 564, 413 N.E.2d 416, 420-21 (1980). Section 5-3-2(a)(6) of the Unified Code (730 ILCS 5/5-3-2(a)(6) (West 2016)) states the presentence report shall contain "any other matters that the investigatory officer deems relevant or the court directs to be included." Additionally, "[t]he presentence investigation must be conducted by a neutral party." *People v. Blanck*, 263 Ill. App. 3d 224, 237, 635 N.E.2d 1356, 1366 (1994). While the Unified Code "does not expressly authorize a probation officer to make a sentence recommendation, *** the trial judge may receive such a recommendation." *People v. Young*, 52 Ill. App. 3d 671, 675, 367 N.E.2d 976, 979 (1977).

¶ 82          Here, we agree with the State that not only has defendant forfeited this issue by failing to object at the sentencing hearing and raising the issue in his motion to reconsider his sentence, he has also waived any argument concerning the PSI by affirmative acquiescence. At

the sentencing hearing, the court asked defendant whether he had any corrections to the PSI, and Piraino replied there were none. See *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 60, 129 N.E.3d 755 ("It is well settled that a party cannot acquiesce to the manner in which the trial court proceeds and later claim on appeal that the trial court's actions constituted error.").

¶ 83          However, even if we were to excuse defendant's waiver, we would reject defendant's argument. We agree that any suggestion defendant used "force" to commit the offenses in this case is not supported by the factual basis presented at the plea hearing. However, there is no evidence defendant suffered prejudice from these incorrect statements. The court heard extensive arguments from defendant's counsel that defendant did not use physical force or violence in this case, and at no point did the State suggest force was used. The court did not state at any time when it pronounced the sentence that it believed defendant used force to commit the crimes in this case. Additionally, the statement that defendant had a "sexually deviant side" was not overly inflammatory based on the facts in this case and defendant's plea of guilty to four criminal sexual assaults of two victims under the age of 18. See 720 ILCS 5/11-1.20(a)(4) (West 2016). The probation officer who prepared the PSI was permitted to offer his conclusions and recommendations to the court, and we find no reversible error occurred.

¶ 84          In sum, we find no errors with respect to defendant's sentence or sentencing hearing. Thus, no plain error analysis is necessary.

¶ 85                        C. Ineffective Assistance of Counsel

¶ 86          Finally, defendant argues he was denied his constitutional right to the effective assistance of counsel when Piraino and Ortega failed to preserve certain issues for appeal. Specifically, defendant argues Piraino failed to "contemporaneously: (1) object to the consideration of improper factors in aggravation; (2) argue that relevant factors in mitigation

applied; (3) object to the consideration of other improper evidence; and (4) object to a PSI that was not fair and impartial, was objectively unreasonable and served no conceivable strategic purpose," and Ortega "provided ineffective assistance by failing to raise the above outlined issues and Piraino's ineffective representation in his motion to reconsider the sentence." We disagree.

¶ 87 We have addressed the merits of all the underlying issues defendant claims Piraino and Ortega failed to preserve for appeal, and we have found no reversible errors. Accordingly, we need not address defendant's claim he was denied his constitutional right to the effective assistance of counsel when they failed to preserve these meritless issues for appeal. See *People v. Bradford*, 2019 IL App (4th) 170148, ¶ 14, 123 N.E.3d 1285 ("It is axiomatic that a defense counsel will not be deemed ineffective for failing to make a futile objection." (Internal quotation marks omitted.)).

¶ 88 III. CONCLUSION

¶ 89 For the reasons stated, we affirm the trial court's judgment.

¶ 90 Affirmed.