NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 210438-U

NOS. 4-21-0438, 4-22-0651 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 21, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Jersey County |
| MARK L. PROUGH, | ) | No. 09CF122 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | April Troemper, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Cavanagh and Zenoff concurred in the judgment.

**ORDER**

¶ 1  *Held*: The appellate court affirmed, concluding (1) the trial court erred when it *sua sponte* dismissed defendant's postconviction petition at the second stage of proceedings, (2) such error was harmless and did not require reversal, and (3) defendant knowingly and voluntarily waived his right to postconviction counsel.

¶ 2  Defendant, Mark L. Prough, appeals the trial court's judgments dismissing his various *pro se* postconviction pleadings following his conviction for first degree murder. Specifically, in appellate court case No. 4-21-0438, defendant appeals from the trial court's judgment denying his petition *coram nobis*, motion to vacate judgment and rescind sentence, motion to vacate his guilty plea, and successive *pro se* postconviction petition. In appellate court case No. 4-22-0651, defendant appeals the trial court's dismissal of his initial *pro se* postconviction petition. In October 2022, this court allowed defendant's motion to consolidate the appeals.

¶ 3        On appeal, defendant argues the trial court erred when it (1) dismissed his initial postconviction petition, "which had advanced to the second stage, without the [S]tate filing a motion to dismiss" and (2) allowed defendant to waive his right to postconviction counsel without determining whether the waiver was knowing and voluntary. Alternatively, defendant contends the court erred when it dismissed his initial postconviction petition because it failed to consider defendant's amendments to the petition, which made a substantial showing of a constitutional violation. The State responds that (1) neither defendant's initial nor successive postconviction petitions were advanced to the second stage of proceedings, (2) the court did not abuse its discretion when it allowed defendant to waive postconviction counsel, and (3) the court properly dismissed defendant's petitions and all other related filings.

¶ 4        We hold the trial court erred when it *sua sponte* dismissed defendant's postconviction petition at the second stage of postconviction proceedings, but because the error was harmless, reversal is not required. We further hold defendant knowingly and voluntarily waived his right to postconviction counsel. Accordingly, the trial court's judgment is affirmed.

¶ 5                              I. BACKGROUND

¶ 6                           A. Defendant's Charges

¶ 7        On July 29, 2009, a grand jury charged defendant by indictment with first degree murder (720 ILCS 5/9-1(a) (West 2008)). The indictment alleged defendant, "without lawful justification and with the intent to kill [his father] Dennis Prough, shot Dennis Prough in the upper chest area with a shotgun."

¶ 8        In August 2009, defendant's attorney, Scott Schultz, filed a motion for a mental examination and hearing as to defendant's fitness for trial, which the trial court allowed. On October 29, 2009, Dr. John Rabun filed a fitness evaluation. Dr. Rabun opined, within a reasonable

degree of medical certainty, defendant was suffering from paranoid schizophrenia. The parties stipulated to the findings contained in the fitness report, and in November 2009, the court found defendant unfit to stand trial. However, the court also found a substantial probability existed he could be fit within one year. Defendant was then remanded to the custody of the Illinois Department of Human Services (DHS) for treatment.

¶ 9        In April 2010, DHS filed a notice of change of status, finding defendant was now fit to stand trial. After reevaluating defendant, Dr. Rabun found that while defendant had the capacity to understand the proceedings against him and assist in his own defense, he could become unfit again. In July 2010, defendant filed a motion to dismiss his counsel and proceed *pro se*. The trial court *sua sponte* ordered a follow-up examination by Dr. Daniel Cuneo to determine defendant's fitness. In October 2010, Dr. Cuneo filed a report opining that defendant suffered from schizoaffective disorder, bipolar type. Dr. Cuneo concluded defendant was unfit to stand trial because his illness substantially impaired his ability to understand the nature and purpose of the proceedings and assist in his defense.

¶ 10        In December 2010, defendant's counsel moved for a discharge hearing, which was held in March 2011. At the conclusion of the discharge hearing, the trial court found sufficient evidence was presented to prevent an acquittal on the first degree murder charge but it was unable to conclude defendant was not guilty by reason of insanity. The court found defendant "not not guilty" and ordered him committed to DHS for five years.

¶ 11        Defendant appealed, and this court allowed the Office of the State Appellate Defender's (OSAD) motion to withdraw as counsel on the basis no meritorious issues could be raised and affirmed the trial court's judgment. *People v. Prough*, 2012 IL App (4th) 110346-U.

¶ 12                    B. Additional Fitness Proceedings

- 3 -

¶ 13         In February 2013, DHS filed a fitness recommendation report authored by McFarland Mental Health Center (McFarland) staff. The report indicated defendant was refusing to take prescribed psychotropic medications to malinger and avoid being found fit for trial.

¶ 14         In June 2013, the trial court proceeded to a hearing on whether defendant had been restored to fitness. At the beginning of the hearing, the parties requested the court take judicial notice of reports filed by DHS prior to the proceedings. According to Dr. Cuneo's May 2013 fitness evaluation, defendant had been uncooperative with his treatment at McFarland and refused to willingly take his medications. Dr. Cuneo opined that defendant's mental illness continued to prevent him from understanding the nature and purpose of the proceedings against him and assisting in his own defense, and he therefore remained unfit for trial. The court took the matter under advisement and ordered the State to determine whether the Jersey County jail was capable of administering defendant's medications.

¶ 15         In July 2013, DHS filed another report, indicating its opinion defendant was fit for trial so long as he continued to take his prescribed medication. Following an August 2013 hearing, the trial court found defendant fit for trial.

¶ 16                              C. *Alford* Plea

¶ 17         At the September 2013 pretrial conference, the parties announced defendant intended to enter an *Alford* plea (see *North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (holding that a defendant is entitled to enter a guilty plea while maintaining his innocence)). The court admonished defendant of his right to persist in his plea of not guilty and go to trial. It further admonished him that if he agreed the State could present enough evidence of his guilt, the matter would then be set for sentencing "with an agreed to disposition." Defendant stated he understood the proceedings, and the court took judicial notice of the discharge hearing. The State then

presented evidence of defendant's mental state at the time of the alleged first degree murder, and the court took judicial notice of Dr. Cuneo's March 22, 2011, report opining that defendant was legally insane at the time of Dennis's murder.

¶ 18 Defendant agreed the State could present sufficient evidence to find him guilty of first degree murder, and the court found the same. The trial court further found the evidence supported a finding that at the time defendant committed the offense, he was mentally ill. Accordingly, the court found defendant guilty but mentally ill and continued the matter for sentencing.

¶ 19 In February 2014, the State orally moved to amend the bill of indictment to allege, "[d]efendant committed the offense of first degree murder in that defendant[,] without lawful justification and with the intent to kill, caused the death of Dennis Prough." The trial court accepted the State's factual basis, which defendant agreed the State could prove, and the court further found the plea to be voluntary. Pursuant to an agreement of the parties, defendant was sentenced to 30 years in the Illinois Department of Corrections.

¶ 20 D. Postconviction Petitions

¶ 21 On May 22, 2019, defendant *pro se* filed an initial petition for relief under the Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 to 122-7 (West 2018)). Defendant alleged actual innocence based on the following 10 facts, which are aptly summarized in his brief on appeal as follows:

> "1) [Defendant] told the court on June 28, 2010, that it was relying on documents that were defective on their face. (C. 380)
>
> 2) On that date [defendant] told the court that he did not understand the proceedings. (C. 380-81)

3) On March 30, 2011, [defendant] was identified in open court. (C. 381)

4) No plaintiff, accuser, or injured party came forward and [was] identified in court as 'a living breathing human being that can be confronted as an accuser.' (C. 381)

5) Injured party was never identified as living person in open court, if State of Illinois is a living human being then the State needs to present a power of attorney to act for it. (C. 381-82)

6) ASA and defense counsel are members of the bar—the British Accredited Registry and work for the Queen of England so they are committing treason. (C. 382)

7) Illinois is a corporation and [defendant] could penetrate the corporate veil. (C. 383)

8) Judge Pistorious is also a member of the bar, judges can be elected out. (C. 383)

9) The court erred in finding [defendant] [guilty but mentally ill] when he was not mentally ill. (C. 384)

10) [Defendant] did not volunteer for buccal swab for his DNA. (C. 384)"

¶ 22　　　　On May 23, 2019, one day after filing his initial postconviction petition, defendant filed a second postconviction petition without leave of court. Defendant again alleged actual innocence based on a series of 34 "facts," which again are aptly summarized in his brief on appeal as follows:

"1) [Defendant] told the court on June 28, 2010, that it was relying on documents that were defective on their face. (C. 389)

2) On that date [defendant] told the court that he did not understand the proceedings. (C. 389)

3) On June 28, 2010, [defendant] told the court he wanted to fire his attorney. (C. 389)

4) 'At no time in all the 128 pages of court transcripts did a living breathing human being named People of the State of Illinois ever come forward to be recognized in open court or take the stand in the civil discharge hearing.' (C. 390)

5) Dennis Prough must be listed as the plaintiff because the State of Illinois cannot be injured. (C. 391-922)

6) The ASA has no authority to act for victim or State of Illinois. (C. 392-93)

7) No injury was proven. (C. 393)

8) PD Schultz used public funds but refused to present a defense. Roger DeWayne came from Tacoma, Washington for [defendant's] discharge hearing but an armed police officer pointed a gun at him and he left the courtroom. [Defendant] answered questions but was afraid of being shot. (C. 394-95)

9) PD Schultz didn't enter a document on a forensic study. (C. 395-96)

10) [Defendant] was in Chester a year longer than PD Schultz told the court. (C. 397)

11) [Defendant] showed PD Schultz a list of documents. (C. 397)

12) PD Schultz said [defendant] could not use that defense because then the Appellate Court would have to overturn every conviction that relied on forensic science. (C. 397-99)

13) Law and science are an uneasy alliance. (C. 399)

14) PD Schultz was shown Mellenburg principle. (C. 400)

15) At discharge hearing, Klaus never explained how DNA got into gun barrel. (C. 401)

16) They had time to transfer DNA since [defendant]'s crime scene technician was not there. (C. 401)

17) Detective Klaus lied to the court at the civil discharge hearing; [defendant] did not submit to buccal swab. (C. 403-04)

18) Set out questioning on DNA from civil discharge hearing. (C. 403-04)

19) [Defendant]'s DNA did not match crime scene evidence. (C. 404)

20) Set out testimony about fire and evidence gathered at scene from civil discharge hearing. (C. 404-06)

21) Listed more testimony about fire and evidence gathered at scene from civil discharge hearing. (C. 404-06)

22) [Defendant] questioned why he was not transferred to mental health center on the day of Dennis' death. (C 406-07)

23) [Defendant] was never identified in open court. (C 407-08)

24) Without a witness, Klaus was lying about what happened at the scene. (C. 408-09)

25) Based on evidence presented at civil discharge hearing, [defendant] cannot be placed at crime scene. (C. 409-10)

26) [Defendant] is an expert witness on polymer films, a certified polymer formulator. (C. 411-12)

27) [Defendant] is a Knight Templar. (C. 412-14)

28) Klaus testified to his training in forensics. (C. 415)

29) [Defendant] was never violent during transfers between McFarland and Chester. (C. 416-17)

30) The police have no case against [defendant]. (C. 418)

31) [Defendant] interviewed two patients at McFarland who got better deals; pharmacology is performing clinical castration on women. (C. 418-21)

32) [Defendant] invented the unified force theory. (C. 421-22)

33) [Defendant] made an ARDC complaint against PD Schultz, who is a BAR double agent. (C. 424-25)

34) Judge Pistorius is also a BAR. (C. 425-27)"

¶ 23 On June 14, 2019, the trial court entered a written order dismissing defendant's "Post Conviction petition filed May 23, 2019." The court found defendant (1) provided no evidence to back his factual claims that the State lacked authority to charge him with the offense in this case and that he was denied the opportunity to confront his accuser, (2) failed to "raise any issues which are a basis" for a postconviction petition, and (3) "presented no evidence whatsoever as to actual innocence." The court's order quoted directly from fact No. 4 in the petition filed May 23, 2019, but did not mention defendant's petition filed May 22, 2019.

¶ 24                     E. Defendant's Additional Filings

¶ 25 In February 2021, defendant *pro se* filed a "writ of *coram nobis*/*mandamus*," raising 17 issues relating to the investigation of Dennis's death, testimony presented at the discharge hearing, and complaints about Schultz's representation. In March 2021, defendant *pro se* filed a motion to vacate judgment and rescind sentence and an addendum to his writ of

*coram nobis*. In the motion and addendum, defendant alleged the evidence presented at his discharge hearing was conflicting, as the authors of the DHS report found him to be fit for trial, while Dr. Cuneo believed defendant remained unfit for trial. Between April and June 2021, defendant *pro se* filed three additional motions to vacate the judgment and rescind his sentence. The motions raised claims relating to the investigation of Dennis's death, evidence presented at his discharge hearing, complaints about Schultz's representation, and that his guilty plea was not knowingly and intelligently entered due to ineffective assistance of counsel, mental illness, extortion, and threats against his life.

¶ 26          In June 2021, the trial court held a hearing on defendant's writ of *coram nobis*. At the beginning of the hearing, the State orally moved to dismiss all of defendant's outstanding motions on the basis they were untimely, not properly pled, and not supported by an affidavit or other evidence. Schultz was present and informed the court he could not represent defendant on the writ of *coram nobis* because it raised the issue of his ineffective assistance. Schultz asked the court to either appoint new counsel for defendant or allow him to proceed *pro se*. The court allowed defendant to respond to the State's oral motion to dismiss, and defendant repeated the arguments raised in his *pro se* pleadings. Defendant further argued his writ was timely and proper because he was raising "new evidence that's been presented out of time." The court then took the matter under advisement.

¶ 27          Before the trial court entered its ruling from the June 2021 hearing, defendant filed additional motions. Between July 6 and July 14, 2021, defendant *pro se* filed the following: (1) a motion to amend his motion to vacate judgment and rescind sentence and writ of *coram nobis*, which was identical to his last motion to amend; (2) a motion to subpoena Richard Perdun of Jerseyville and Beth at the front desk of the Jerseyville public library to bring the book "Evolution

of Physics" to court; (3) a motion to withdraw his guilty plea, which asserted Schultz told defendant he would be killed if he did not enter the *Alford* plea; and (4) a "Post Conviction Relief New Evidence," which again raised issues challenging the investigation of Dennis's death, defendant's arrest, his history of mental health issues, and his dissatisfaction with Schultz's representation.

¶ 28    On July 15, 2021, the trial court entered a written order, which concluded as follows:

"1. [Defendant's] writ of error *coram nobis* is not a proper pleading and the relief requested cannot be granted.

2. [Defendant's] motion to vacate judgment and rescind sentence was filed more than two years after judgment was entered, and therefore this Court lacks jurisdiction. Said motion is denied with prejudice.

3. To the extent [defendant] argues he has filed a successive post-conviction petition, that argument is rejected because leave of court was never sought.

4. Any other petitions, motions, and requests for relief filed since the hearing of June 29, 2021[,] are also denied."

¶ 29    On July 26, 2021, defendant *pro se* filed a notice of appeal regarding the court's July 15, 2021, order dismissing his various pleadings, and OSAD was appointed to represent him in appellate court case No. 4-21-0438. We note that on appeal, defendant has apparently abandoned any argument pertaining to the trial court's July 15 order. However, we have included the factual background from those proceedings as they relate to the arguments presented in appellate court case No. 4-22-0651.

¶ 30    F. Proceedings on Initial Postconviction Petition Dated May 22, 2019

¶ 31 In March 2022, the trial court entered a written order stating, "Post-Conviction Petition dated for May 22, 2019 set for hearing; May 23 petition was addressed[.] However, the May 22nd date wasn't." Several weeks later, defendant *pro se* filed an affidavit stating he had retained an attorney—Roger DeWayne—and did not want counsel appointed to represent him on his postconviction petition. The record shows no such person ever entered an appearance in this case. Defendant asserted he would present facts showing the charging instrument was defective, rendering the previous proceedings void. He further claimed he was receiving death threats and being tortured.

¶ 32 In May 2022, defendant filed a motion to amend his postconviction petition. The motion contained a series of facts relating to the testimony presented at the discharge hearing and complaints regarding Schultz's representation. Several weeks later, defendant filed another motion to amend his postconviction petition. He again set forth a series of facts, this time asserting he was never unfit for trial. Defendant also filed an affidavit, again setting out his claims of the ineffective assistance of Schultz. Specifically, defendant averred he was not admonished during his *Alford* plea. Attached to defendant's motion to amend was a letter from Susan Wilham, an assistant appellate attorney at OSAD, dated February 8, 2022. In the letter, Wilham advised defendant that the trial court failed to admonish defendant of his rights under Illinois Supreme Court Rule 402 (eff. July 1, 2012) before accepting his guilty plea.

¶ 33 In June 2022, defendant filed another motion to amend his postconviction petition. In the motion, defendant asserted that "judges, lawyers and jurors lack scientific expertise to comprehend the evidence and evaluate it in an informed manner" and the "State can't use forensic 'science' (misnomer) to overcome [the] presumption of innocence." Defendant also filed another motion to amend the postconviction petition, arguing he did not understand his rights at his

arraignment and when entering his guilty plea. Defendant further argued the court "incorrectly assume[d] defendant entered [the] plea voluntarily."

¶ 34　　　　On June 9, 2022, the trial court held a hearing on defendant's postconviction petition. Defendant proceeded *pro se*, but Schultz was present as standby counsel. At the beginning of the hearing, defendant stated his appellate attorney from OSAD advised him his trial counsel was ineffective because he was "incorrectly admonished," but that he "didn't meet the time variable," and therefore had to say he was "nuts." Defendant further claimed Schultz refused to adopt his preferred trial strategy. The State informed the court it intended to "stand on Judge Troemper's order which indicated that this is a timing issue" and "[a]ll the filings are late and beyond the statutory period." Defendant reiterated that he was innocent, did not understand the law, and had received ineffective assistance of counsel, and therefore he was unaware of the applicable time limits for his claims.

¶ 35　　　　On July 11, 2022, the trial court entered a written order dismissing defendant's postconviction petition. The court noted the allegations of the May 22 and May 23 petitions were "substantially similar." The court stated that, "because of the similarities in these petitions," it believed that the court's June 2019 order dismissing the May 23 petition intended to address both petitions. However, because "the June 14th order only specifically addresses the May 23 Petition," the court briefly addressed the allegations in the May 22 petition. Specifically, the court found nothing in the petition presented a claim of actual innocence or set forth facts showing any violations of defendant's constitutional rights.

¶ 36　　　　Defendant *pro se* filed a notice of appeal, and OSAD was appointed to represent him in appellate court case No. 4-22-0651, which was thereafter consolidated with appellate court case No. 4-21-0438.

¶ 37                                  II. ANALYSIS

¶ 38        On appeal, defendant argues the trial court erred when it (1) dismissed his initial postconviction petition without the State having filed a motion to dismiss and (2) allowed defendant to waive his right to postconviction counsel without determining whether the waiver was knowing and voluntary. Alternatively, defendant asserts the court erred when it dismissed his initial postconviction petition because it failed to consider defendant's amendments to the petition, which made a substantial showing of a constitutional violation. The State argues (1) neither defendant's initial nor successive postconviction petitions were advanced to the second stage of proceedings, (2) the court did not abuse its discretion in allowing defendant to waive postconviction counsel, and (3) the court properly dismissed defendant's petitions and all other related pleadings. We conclude the court lacked authority to *sua sponte* dismiss defendant's initial petition dated May 22, 2019, at the second stage of proceedings. However, because the error was harmless, the court's judgments are affirmed.

¶ 39                    A. Postconviction Proceedings Generally

¶ 40        The Postconviction Act "provides a mechanism by which a criminal defendant can assert that his conviction and sentence were the result of a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both." *People v. English*, 2013 IL 112890, ¶ 21, 987 N.E.2d 371. The adjudication of a postconviction petition follows a three-stage process. *People v. Allen*, 2015 IL 113135, ¶ 21, 32 N.E.3d 615.

¶ 41        At the first stage of postconviction proceedings, the trial court must, within 90 days of the petition's filing, evaluate the petition without input from the State. *People v. Hodges*, 234 Ill. 2d 1, 10, 912 N.E.2d 1204, 1208 (2009). If the court determines it is frivolous or patently without merit, it must dismiss the petition in a written order. *Id.*; 725 ILCS 5/122-2.1(a)(2) (West

- 14 -

2018). A postconviction petition advances to the second stage of postconviction proceedings if (1) the court fails to rule on the petition within the 90-day period, regardless of the petition's merit (*People v. Harris*, 224 Ill. 2d 115, 129, 862 N.E.2d 960, 969 (2007)) or (2) the facts alleged in the petition state an arguable claim of a constitutional deprivation (*Hodges*, 234 Ill. 2d at 9, 17). Once the petition has advanced to the second stage of proceedings, "the trial court can no longer dismiss the petition *sua sponte*." *People v. Starks*, 2012 IL App (2d) 110324, ¶ 23, 975 N.E.2d 71.

¶ 42　　　　Once the court has docketed a postconviction petition for second-stage proceedings, the State "*shall* answer or move to dismiss." (Emphasis added.) 725 ILCS 5/122-5 (West 2018). Additionally, the court may appoint counsel to represent the defendant. *Id.* § 122-4; *People v. Edwards*, 197 Ill. 2d 239, 246, 757 N.E.2d 442, 446 (2001). The relevant inquiry at the second stage is "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Johnson*, 2018 IL 122227, ¶ 15, 123 N.E.3d 1083. The defendant bears the burden of making such a showing. *People v. Domagala*, 2013 IL 113688, ¶ 35, 987 N.E.2d 767. If the defendant satisfies his burden, the petition advances to a third-stage evidentiary hearing. *Edwards*, 197 Ill. 2d at 246; 725 ILCS 5/122-6 (West 2018).

¶ 43　　　　　　　　　　B. Dismissal of Defendant's Petition

¶ 44　　　　Defendant first argues the trial court improperly dismissed his May 22 postconviction petition *sua sponte* at the second stage of proceedings pursuant to *Starks*, 2012 IL App (2d) 110324, ¶ 23. The State asserts defendant's petition never advanced to the second stage of proceedings and *Starks* is therefore inapplicable in this case.

¶ 45　　　　1. *Whether Defendant's May 22 Petition Advanced to the Second Stage*

¶ 46　　　　The State disputes defendant's contention that his May 22 petition advanced to the second stage of proceedings. Specifically, the State argues the trial court's June 14, 2019, order

dismissing the May 23 petition was intended to address both the May 22 and May 23 petitions, as they were substantially similar. The State also maintains the court's July 15, 2021, order effectively dismissed all of defendant's pending pleadings, including the May 22 postconviction petition. The State is incorrect.

¶ 47 Defendant's May 22 petition advanced to the second stage of proceedings by operation of law when the trial court failed to rule on it within 90 days of its filing. See 725 ILCS 5/122-2.1(b) (West 2018). The record shows the court did not acknowledge or address defendant's May 22 petition until March 2022, when it entered an order stating, "Post-Conviction Petition dated for May 22, 2019 set for hearing; May 23 petition was addressed[.] However, the May 22nd date wasn't."

¶ 48 Although the State insists the trial court's June 2019 order addressed both petitions, the record is bereft of support for this position. While it is true the petitions raised similar issues, there were differences. The court neither acknowledged defendant had filed a postconviction petition on May 22 nor alluded to any of the specific claims raised therein. Instead, all of the quoted material in the court's order originated from defendant's May 23 petition. If the court was aware of the May 22 petition, it is unclear why it did not advise in its order dismissing the May 23 petition that defendant had failed to seek leave to file it as a successive postconviction petition. If the court planned to construe the two filings as a single petition for relief, it neglected to state its intention to do so.

¶ 49 Furthermore, the trial court's July 15, 2021, order did not acknowledge the May 22 petition. Instead, it dismissed defendant's pleadings filed "since the hearing of June 29, 2021" and rejected any claim defendant had filed a *successive* petition because he had not sought leave to file one.

¶ 50	In the absence of any positive indication that the May 22 petition was disposed of within 90 days, it automatically advanced to the second stage of proceedings under section 122-2.1(b) of the Act. 725 ILCS 5/122-2.1(b) (West 2018); *Harris*, 224 Ill. 2d at 129.

¶ 51	2. *Whether the Court Lacked Authority to Dismiss the May 22 Petition*

¶ 52	As stated above, defendant argues the court lacked authority to dismiss his initial petition *sua sponte* at the second stage of proceedings under *Starks*.

¶ 53	In *Starks*, the defendant's postconviction petition advanced to the second stage of proceedings after 90 days lapsed. *Starks*, 2012 IL App (2d) 110324, ¶¶ 17, 22. The trial court then entered a written order dismissing the defendant's petition on the basis he lacked standing to challenge his conviction and sentence under the provisions of the Postconviction Act. *Id.* ¶ 17. On appeal, the defendant argued the trial court erred when it *sua sponte* dismissed his petition for lack of standing at the second stage of proceedings. *Id.* ¶ 20. The Second District agreed, concluding that "when the 90 days had passed, the trial court lost its power to dismiss *sua sponte* defendant's 2006 petition for lack of standing." *Id.* ¶ 24. The *Starks* court, citing *People v. Kitchen*, 189 Ill. 2d 424, 43-45, 727 N.E.2d 189, 194 (1999), concluded that because the State had not filed a motion to dismiss for the trial court to rule upon, the court committed reversible error. *Starks*, 2012 IL App (2d) 110324, ¶ 24.

¶ 54	In *Kitchen*, 189 Ill. 2d at 427-28, the defendant's postconviction petition advanced to the second stage of postconviction proceedings, and his postconviction counsel sought leave to conduct discovery to support appropriate amendments to the defendant's initial petition. The State filed objections to the defendant's motion for discovery, and the case proceeded to a hearing on the discovery motion. *Id.* at 430. At the hearing, the trial court denied the defendant's discovery requests and, finding the defendant's petition failed to state a valid claim for relief, ordered that it

be dismissed. *Id.* On appeal to the Illinois Supreme Court, the defendant argued the denial of his petition without notice deprived him of his constitutional right to procedural due process. *Id.* at 434. The supreme court agreed, finding that "defense counsel went to court prepared for one type of proceeding, only to be surprised when the trial court, without prior notice, reached the merits of the petition and denied all post-conviction relief." *Id.* at 435. Specifically, the court found the result was compelled by its prior decision in *People v. Bounds*, 182 Ill. 2d 1, 694 N.E.2d 560 (1998). *Kitchen*, 189 Ill. 2d at 434.

¶ 55    In *Bounds*, 182 Ill. 2d at 4-5, the defendant's postconviction petition advanced to the second stage of proceedings, and the State filed a motion to dismiss. The defendant filed a discovery motion and a motion for a continuance, but at the next status hearing, the trial court granted the State's motion to dismiss without ruling upon the defendant's motions. *Id.* at 5. On appeal to the supreme court, the defendant argued the trial court's ruling dismissing the postconviction petition without proper notice denied him due process of law. *Id.* The supreme court held that "[a] trial court's discretion in resolving post-conviction petitions does not allow the court to convert a status call to a hearing on the merits without notice to the parties," and therefore the court's procedure violated the defendant's right to procedural due process. *Id.*

¶ 56    Here, the decisions in *Bounds*, *Kitchen*, and *Stark* compel a finding that the trial court's dismissal of defendant's petition at a status hearing without the State having filed a motion to dismiss violated defendant's procedural due process rights. The record shows the trial court noticed defendant's petition for a "status" hearing on June 9, 2022, and the State had not filed a motion to dismiss it. When asked by the court at the status hearing what the day's proceedings would entail, the State indicated it was going to "stand on Judge Troemper's [July 2021] order which indicated that this is a timing issu[e]. It's lapsed. It's over. So, that's what the State would

object to today, that this case has been dissolved due to timing." The court then informed the parties it would "take arguments in terms of *** why [defendant's] relief should be granted." The State responded it had no argument, and defendant argued he was innocent and was denied the effective assistance of his trial counsel. After taking the matter under advisement, the court entered the written order opining that the trial court intended to dismiss both the May 22 and May 23 petitions. The court nonetheless addressed the merits and ordered that the petition be denied. Similarly to *Kitchen* and *Bounds*, the court essentially converted a status hearing on defendant's misplaced postconviction petition into a hearing on the petition's merits without having a motion to dismiss before it. Although it allowed the parties to present "arguments," the purpose of those arguments is unclear, and neither party presented any evidence. The court lacked authority to dismiss the petition at the second stage of proceedings without having entertained a motion to dismiss it, and its unusual procedure therefore violated defendant's procedural due process rights. See *Starks*, 2012 IL App (2d) 110324, ¶ 24; *Kitchen*, 189 Ill. 2d at 434-35; *Bounds*, 182 Ill. 2d at 5.

¶ 57                    3. *Whether the Court's Error Requires Reversal*

¶ 58            Having concluded the trial court's procedure violated defendant's procedural due process rights, the next inquiry is whether harmless error review applies, and if so, whether the court's error requires reversal. The State does not specifically argue this court should apply a harmless error analysis, as it does not concede any error occurred. However, it asserts the judgment should be affirmed because defendant's petition, amendments, and various filings failed to make a substantial showing of a constitutional violation or claim of actual innocence. Defendant maintains the court's erroneous dismissal of his petition is automatically reversible, but argues in

the alternative that his petition made a substantial showing that his plea was involuntary and that he was denied the effective assistance of counsel.

¶ 59    Under the supreme court's recent decision in *People v. Pingelton*, 2022 IL 127680, ¶ 66, we conclude harmless error review is applicable in this case and that reversal is not required. Specifically, we hold (1) the due process violation was not indeterminate and did not render the proceedings automatically unfair or unreliable and (2) defendant failed to make a substantial showing of a constitutional violation.

¶ 60                            a. Application of Harmless Error Analysis

¶ 61    In *Pingelton*, the defendant filed a postconviction petition that was advanced to the second stage of proceedings. *Id.* ¶ 10. The State filed a motion to dismiss, and the defendant's appointed postconviction counsel filed a motion to withdraw. *Id.* ¶¶ 11-12. The defendant filed a response to postconviction counsel's motion, and the trial court set the matter for a status hearing. *Id.* ¶ 14-17. At the status hearing, the trial court first heard arguments on the State's motion to dismiss, followed by arguments on postconviction counsel's motion to withdraw. *Id.* ¶¶ 17-19. Neither the defendant nor postconviction counsel provided arguments on the State's motion to dismiss. *Id.* ¶ 17. The court took the matter under advisement and later entered a written order granting the State's motion to dismiss as well as postconviction counsel's motion to withdraw. *Id.* The defendant appealed, arguing the trial court violated his right to procedural due process by granting the State's motion to dismiss without giving him notice of the motion and an opportunity to respond. *Id.* ¶ 22. The appellate court affirmed, concluding that although the trial court's procedure violated the defendant's procedural due process rights, the error was nonetheless harmless because the claims in the defendant's petition lacked merit. *Id.* ¶¶ 23-25.

¶ 62        On appeal to the Illinois Supreme Court, the defendant argued the trial court's dismissal of his petition deprived him of procedural due process because (1) he was deprived of sufficient notice and an opportunity to respond to the State's motion to dismiss and (2) the matter had been set for "status" and none of the parties had been given notice that the State's dispositive motion would be addressed at the hearing. *Id.* ¶ 29. The supreme court agreed the defendant was deprived of his constitutional right to due process. *Id.* ¶¶ 38-41. However, the supreme court also found the error was not automatically reversible. *Id.* ¶ 46. Specifically, the court stated that when faced with a procedural error in a postconviction proceeding, the reviewing court should consider whether such error was " 'unquantifiable and indeterminate' such that it rendered the proceeding 'automatically unfair or unreliable.' " *Id.* ¶ 46 (quoting *People v. Stoecker*, 2020 IL 124807, ¶ 25, 181 N.E.3d 201). Consequently, "[w]here it is possible to determine that the petitioner was not harmed by the alleged constitutional deprivation and that further proceedings would be futile, harmless error analysis applies to the second-stage dismissal of a postconviction petition." *Id.* ¶ 36. Applying its holding to the facts, the supreme court held the procedural error was harmless because the defendant failed to make a substantial showing of a constitutional violation. *Id.* ¶ 64.

¶ 63        Although distinguishable from the facts in *Pingelton*, as the State in that case had, in fact, filed a motion to dismiss the defendant's postconviction petition, we nonetheless conclude the trial court's dismissal of defendant's postconviction petition in this case is subject to harmless error review. Like the trial court in *Pingelton*, the trial court here dismissed defendant's postconviction petition at the second stage of proceedings at a status hearing without notice to the parties. The error was therefore not so indeterminate or unquantifiable such that it rendered the proceedings automatically unfair or unreliable. See *id.* ¶ 44. Accordingly, this court will consider,

- 21 -

*de novo*, whether defendant's petition made a substantial showing of a constitutional violation. See *People v. Sanders*, 2016 IL 118123, ¶ 31, 47 N.E.3d 237.

¶ 64                                     b. This Case

¶ 65          Although defendant has raised many claims between his petition and amendments, his brief on appeal only raises the issue of whether he made a substantial showing (1) his *Alford* plea was not knowingly and voluntarily entered because the trial court failed to properly admonish him under Illinois Supreme Court Rule 402 (eff. July 1, 2012) and (2) Schultz was ineffective when he allowed defendant to plead guilty despite the court's failure to properly admonish defendant under Rule 402. Accordingly, this court will address only these claims.

¶ 66          To be constitutionally valid, an *Alford* plea, like any other guilty plea, must be knowingly and voluntarily made. See *People v. Urr*, 321 Ill. App. 3d 544, 547, 748 N.E.2d 235, 238 (2001); Ill. S. Ct. R. 402(b) (eff. July 1, 2012) ("[T]he court shall not accept a plea of guilty without first determining that the plea is voluntary."). The trial court is also required to explain to a defendant entering a guilty plea the consequences of that plea. 725 ILCS 5/113-4(c) (West 2012). To ensure that a defendant understands the implications of his guilty plea, Rule 402 requires the trial court to "admonish [the] defendant on the nature of the crime charged, the sentencing range, and the rights defendant forfeits as a result of pleading guilty." *Urr*, 321 Ill. App. 3d at 547. "It is well settled that Rule 402 requires substantial, not literal, compliance with its provisions." *People v. Dougherty*, 394 Ill. App. 3d 134, 138, 915 N.E.2d 442, 446 (2009). "Substantial compliance requires 'an affirmative showing in the record that the defendant understood each of the required admonitions' and 'necessitates a reading of the entire record, including what transpired at earlier proceedings.' " *People v. Bailey*, 2021 IL App (1st) 190439, ¶ 27, 196 N.E.3d 197 (quoting *People v. Saleh*, 2013 IL App (1st) 121195, ¶ 14, 995 N.E.2d 375).

¶ 67 Additionally, "[t]he failure to properly admonish does not automatically require a reversal or a vacation of a guilty plea." *People v. Blankley*, 319 Ill. App. 3d 996, 1007, 747 N.E.2d 16, 25 (2001). Instead, " '[w]hether reversal is required depends on whether real justice has been denied or whether defendant has been prejudiced by the inadequate admonishment.' " *Id.* (quoting *People v. Davis*, 145 Ill. 2d 240, 250, 582 N.E.2d 714, 719 (1991)).

¶ 68 Additionally, ineffective assistance claims based on defense counsel's failure to raise the issue of inadequate Rule 402 admonishments are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Pace*, 2015 IL App (1st) 110415, ¶ 77, 44 N.E.3d 378, *vacated on other grounds*, *People v. Pace*, No. 120097 (Nov. 23, 2016) (supervisory order). To prevail on such a claim, a criminal defendant must show that trial counsel's performance was objectively deficient and, but for counsel's unprofessional errors, he would not have entered a guilty plea. See *id.* ¶¶ 77-78.

¶ 69 Here, reversal is not required because defendant's petition, amendments, and related filings failed to make a substantial showing his *Alford* plea was not knowingly and voluntarily entered or that he received ineffective assistance of counsel. First, as the State argues, defendant's claim is untimely because he entered his plea in 2013 but did not raise any specific issue with the court's admonishments until prompted by OSAD's February 2022 letter. See 725 ILCS 5/122-1(c) (West 2018) (stating that unless the delay was not due to the defendant's culpable negligence, no postconviction proceedings shall be commenced more than six months after proceedings in the United States Supreme Court if a direct appeal is taken, and no more than three years after the date of conviction if no direct appeal is taken). Defendant offers no explanation regarding the delay in raising this specific issue.

¶ 70 Moreover, even if this court determined that defendant's delay in raising this specific claim was not due to his culpable negligence, any deficiency with the trial court's admonishments did not result in the denial of real justice or prejudice to defendant. First, and most significantly, defendant did not allege in his petition or amendments, and does not argue in his brief on appeal, that but for the trial court's deficient admonishments, he would not have pleaded guilty and would have insisted on proceeding to trial. Defendant does not attempt to explain how this failure impacted his decision to plead guilty or why his decision would have been different if that right had been explained to him.

¶ 71 Furthermore, at the plea hearing, the trial court stated, "[Defendant], you have a right to persist in your plea of not guilty and proceed to trial or you can give up that right and enter into some form of a plea." The court then specifically stated it had before it defendant's proposed plea agreement, which defendant does not dispute that he signed, stating he waived his right to a jury trial. Schultz then informed the court he had met with defendant three times since he had been found fit for trial, and that he had "reviewed the legal aspects of a potential trial as well as revisited issues" defendant wanted to address.

¶ 72 Looking to the proceedings leading to defendant's guilty plea, at the August 2013 hearing on whether defendant had been restored to fitness for trial, the trial court stated it had reviewed the reports submitted by DHS. In the February 2013 report, the author stated, "[Defendant] has accurately described to the Clinical Director that he knows what a trial is as well as understanding the difference between a jury trial and a bench trial" and that "defendant is the person who decides which type of trial is held." It further stated, "[Defendant] has likewise explained to the Clinical Director several times that he understands what entering a plea of Guilty and Not Guilty means and what happens in the process of criminal court proceedings after each

type of plea is entered." The entire purpose of the fitness proceedings leading up to defendant's guilty plea were centered around whether defendant understood the charges and legal proceedings generally, his right to persist in a plea of not guilty, and his ability to assist in his defense.

¶ 73 We acknowledge that defendant's signature on the jury waiver alone is not sufficient to remedy insufficient Rule 402 admonishments (*People v. Spencer*, 16 Ill. App. 3d 899, 901, 307 N.E.2d 212, 213 (1974)), and the admonishments provided at the plea hearing are the primary concern in reviewing the voluntariness of a defendant's guilty plea (*Blankley*, 319 Ill. App. 3d at 1007). However, when combined with defendant's failure to explain how the insufficient admonishments affected his decision to plead guilty and the ample evidence showing defendant understood his right to plead not guilty and proceed to a jury trial, the record does not support a finding defendant was denied real justice or prejudiced. Neither does defendant explain how, but for Schultz's failure to object to or raise the issue of the improper admonishments, the result of the proceedings or his decision to plead guilty would have been different. In the absence of prejudice resulting from the allegedly improper admonishments and ineffective assistance of counsel, defendant's petition and amendments failed to make a substantial showing of a constitutional violation.

¶ 74 Because defendant has failed to make a substantial showing of a constitutional violation, the erroneous *sua sponte* dismissal of his postconviction petition at the second stage does not require reversal in this case. Just as the court found in *Pingelton*, defendant "was not harmed by the alleged constitutional deprivation and *** further proceedings would be futile." *Pingelton*, 2022 IL 127680, ¶ 36.

¶ 75 C. Waiver of Postconviction Counsel

¶ 76　　　　　　Finally, defendant argues the trial court erred when it allowed defendant to waive postconviction counsel without first determining whether such waiver was knowing and voluntary. The State argues the court did not err when it allowed defendant to waive postconviction counsel and proceed *pro se*.

¶ 77　　　　　　As stated above, at the second stage of postconviction proceedings, the trial court may appoint counsel to represent the defendant. *Edwards*, 197 Ill. 2d at 246. The right to appointed counsel in a postconviction proceeding is not constitutional but rather statutory in nature. 725 ILCS 5/122-4 (West 2020); see also *People v. Suarez*, 224 Ill. 2d 37, 42, 862 N.E.2d 977, 979 (2007). Specifically, section 122-4 of the Postconviction Act provides, regarding the appointment of counsel:

> "If the petitioner is without counsel and alleges that he is without means to procure counsel, he shall state whether or not he wishes counsel to be appointed to represent him. If appointment of counsel is so requested, *** the court shall appoint counsel if satisfied that the petitioner has no means to procure counsel." 725 ILCS 5/122-4 (West 2020).

"[A]ppointment of counsel is not mandatory [citation], but will be provided if the petition is not dismissed pursuant to section 122-2.1, and the court is satisfied that a petitioner *who has requested representation* is without means to retain his own counsel." (Emphasis added.) *People v. Cooper*, 148 Ill. App. 3d 412, 415-16, 499 N.E.2d 599, 601 (1986). Conversely, "a postconviction petitioner has a right to represent himself in postconviction proceedings." *People v. Harrison*, 2018 IL App 3d 150419, ¶ 11, 115 N.E.3d 239. "In fact, a court *must* accept a defendant's knowing and intelligent request to proceed *pro se* provided that the waiver is clear and unequivocal, not ambiguous." (Emphasis added.) *Id.* While the interpretation of section 122-4 of the Postconviction

- 26 -

Act is reviewed *de novo* (see *People v. Gibson*, 377 Ill. App. 3d 748, 750, 879 N.E.2d 1059, 1061 (2007)), the court's ultimate finding of a valid waiver is reviewed for an abuse of discretion. *People v. Pike*, 2016 IL App (1st) 122626, ¶ 114, 53 N.E.3d 147.

¶ 78        Here, defendant waived his right to postconviction counsel by claiming to be represented by a fictitious attorney and specifically requesting the trial court not to appoint counsel for him. First, to the extent defendant argues the court failed to properly admonish him regarding the consequences of waiving counsel pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), this court has rejected the claim a defendant is entitled to Rule 401(a) admonishments after he has already been convicted and sentenced while being represented by counsel. *People v. Young*, 341 Ill. App. 3d 379, 387, 792 N.E.2d 468, 476 (2003). Because defendant in this case had already been convicted and sentenced, the court's alleged failure to provide such admonishments did not constitute error.

¶ 79        Moreover, in our *de novo* interpretation of section 122-4 of the Postconviction Act, defendant's insistence that he was not indigent and did not want counsel appointed not only unequivocally waived his right to counsel but essentially disqualified the court from doing so. See 725 ILCS 5/122-4 (West 2020) ("*If appointment of counsel is so requested*, *** the court shall appoint counsel *if satisfied that the petitioner has no means to procure counsel*." (Emphases added.)). In his affidavit filed March 26, 2022, shortly after the trial court set his May 22, 2019, petition for a status hearing, defendant averred as follows:

> "To any and all persons, you are hereby given official notice that [defendant] has retained a private attorney in fact, Roger DeWayne, and am no longer indigent and do not want or need an attorney at law appointed by the court from the Jersey County Public Defender[']s Office or a private attorney at law

appointed by the court to represent [defendant] in this matter 09-CF-122 or any other matter in this postconviction petition action."

The record also shows defendant has repeatedly claimed to be represented by DeWayne, but no such person has ever entered an appearance on defendant's behalf. Nor has defendant provided any contact information for such a person. Defendant also claimed, in his postconviction petition filed May 23, 2019, that DeWayne "came from Tacoma, Washington for [defendant's] discharge hearing but an armed police officer pointed a gun at him and he left the courtroom." This court has no record showing whether DeWayne exists, and while such a notion is more than dubious, it is clear defendant has used this character to avoid being appointed representation by the trial court. Given defendant's other outlandish claims, the trial court's ultimate decision to allow defendant to proceed *pro se* with Schultz as standby counsel did not constitute an abuse of discretion.

¶ 80                                    III. CONCLUSION

¶ 81          For the reasons stated, consistent with Illinois Supreme Court Rule 23(b) (eff. Jan. 1, 2021) we affirm the trial court's judgments.

¶ 82          Affirmed.